**AUTOMATED DATATRON, INC.**

**v.**

**Kenneth H. WOODCOCK, Appellant.**

**No. 80–1827.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 22, 1981.

Decided July 8, 1981.

Thomas L. Heeney, Rockville, Md., with whom Robert C. Heeney, Rockville, Md., was on the brief, for appellant.

Amy Robertson Goldson, Washington, D. C., for appellee. Gary David Gayton, Washington, D. C., also entered an appearance for appellee.

Before McGOWAN, MacKINNON and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

Dissenting opinion filed by Circuit Judge MacKINNON.

---

GINSBURG, Circuit Judge:

This appeal presents the question whether the district court abused its discretion in dismissing, in June 1980, a count of the defendant's counterclaim because the defendant failed to comply with the trial court's December 1979 order to join as a defendant to the counterclaim a party needed for just adjudication. We conclude that, in the particular circumstances presented, further tolerance on the part of the district judge was not required. The court had earlier reminded the defendant of his obligation to comply promptly with the joinder order; no reason other than oversight was supplied for the prolonged noncompliance; the court directed the dismissal when, approximately two weeks short of the rescheduled trial date, the requisite preparatory step had not yet been taken. While even at that late stage a less drastic sanction might have been entertained, the district court's action did not constitute an excessive exercise of authority. To prevent litigation delay and waste of scarce judicial resources, a trial judge must be equipped to call time on a party who had ample opportunity, prior to the eve of trial, to follow the court's clear instruction.

## I

Automated Datatron, Inc. (ADI), filed this action in 1978 alleging that Woodcock, a former employee, had breached his fiduciary duty to ADI. Woodcock counterclaimed, asserting that ADI owed him money on the basis of a "Stock Agreement" signed by Charles E. Marks, ADI's sole shareholder. Nearly a year later, on October 19, 1979, the district court requested Woodcock to consider promptly whether he wished to join Marks as an adverse party on the counterclaim. The district judge suggested five days to resolve the question, and reminded both parties that she was looking toward a trial date of December 10. App. 32, 37. At Woodcock's request, she extended the time to a week, until October 26, but again cautioned that "the more time I give you, please be aware the less chance it is

that you will go to trial on the date that we had scheduled." App. 38–39.

Woodcock determined in timely fashion that he did not intend to join Marks and so informed the court. On December 4, 1979, in response to ADI's motion, the court ruled that Marks was a party needed for just adjudication under Rule 19, whose joinder would not strip the court of diversity jurisdiction [1] because Woodcock's counterclaim was compulsory and therefore required no independent jurisdictional base. 84 F.R.D. 408 (D.D.C.1979). Accordingly, the court ordered Woodcock to join Marks as a party. App. 52.

Six days later, at a further hearing, the court specifically inquired whether Woodcock had joined Marks. Woodcock's counsel responded that Marks had not yet been joined, but that counsel would "file the appropriate pleadings." App. 65. At that hearing, the court set a trial date of June 23, 1980, then over six months away. App. 67.

Six months later, with the trial date in sight, Woodcock had still not joined Marks as a party. The district judge, considering ADI's motion for summary judgment on count III of the counterclaim, observed that despite the December 4, 1979, order that Woodcock join Marks, "for reasons best known to defendant and his counsel he has not done so in the intervening six months." App. 73. Finding no excuse for the failure to join Marks, the district judge, on June 6, 1980, dismissed count III of the counterclaim. App. 74.

Woodcock moved for reconsideration of the June 6 order and for a continuance. On June 17, the district court denied the motion. App. 75–76. Since steps "to insure the proper litigation of [the] counterclaim were fully within the control of defendant," the district judge concluded that "the interests of justice would not be served by any further delay of the trial." App. 75. On the day trial was scheduled to open, the parties settled their remaining claims. App. 82–86.

1. Both Marks and Woodcock were Maryland citizens.

## II

A district court has power to dismiss an action or a counterclaim involuntarily because of a party's failure to comply with court orders or rules designed to ensure orderly prosecution of the claim. *Link v. Wabash R.R.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see* Fed.R.Civ.P. 41(b). Woodcock points out that this court and others have been reluctant to approve exercise of that power at a pretrial stage when measures less final and definitive than dismissal are available. *See, e. g., Butler v. Pearson*, 636 F.2d 526 (D.C.Cir.1980).

But the conspicuous disregard of the trial court's order in this case persisted beyond the pretrial discovery and preparatory stage into the month scheduled for trial. The district judge repeatedly called to the parties' attention her concern to use her courtroom efficiently and her determination to assure that a trial, already rescheduled once, would not be postponed again. Counsel's prolonged failure to carry out the court's instruction prevented the trial judge from adhering to a schedule planned months in advance.[2] As the First Circuit observed in affirming the district court's dismissal of a case with prejudice when counsel's postponements thwarted commencement of trial on a rescheduled date:

> Court calendars and trial assignments are not made to accommodate attorneys; it is the interest of the litigants in the orderly processing and trial of cases that is paramount. While we realize that the sins of the attorney are being visited upon the plaintiff, we must also recognize that the wheels of justice which now turn ever more slowly for civil cases would grind to a halt if delays such as the one requested were to be allowed.

*Pease v. Peters*, 550 F.2d 698, 701 (1st Cir. 1977).

We underscore that no reason other than inadvertence or oversight is advanced for the failure to join Marks in the six months following the court's reminder to counsel to attend to the joinder. No special circumstances were presented that might explain, even if they would not wholly excuse, the neglect. Compliance with the order called for no heavy investment of time or expense.

If district court judges are to discharge their heavy responsibilities effectively, their power to dismiss, in situations such as the one before us, must be more than theoretical. We hold that it was not an abuse of discretion to rule that two weeks short of trial was too late for the filing and service of a pleading adding a party when the court had directed the litigant to take that action half a year earlier.

*Affirmed.*

MacKINNON, Circuit Judge, dissenting:

Although a district court has the *power* under appropriate circumstances to dismiss a claim for failure by a party to comply with a court order, *see Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), in my judgment the district court *abused its discretion* in this case in dismissing Woodcock's counterclaim. I therefore dissent.

I am guided to this view by our decision in *Jackson v. Washington Monthly Co.*, 569 F.2d 119 (D.C.Cir.1977) (Judges McGowan, Tamm, Robinson) (unanimous decision). *Accord, Butler v. Pearson*, 636 F.2d 526 (D.C.Cir.1980). There, as here, the district court had dismissed a cause of action with prejudice for a party's failure to comply with a court order. The court explained that

> [a]t first blush, the question before us might seem to be whether the District Court had authority to impose a dismissal with prejudice, predicated as it was upon but a single violation by counsel of a pretrial directive. Were that truly the pertinent inquiry, we would be confronted at the outset by the Supreme Court's

---

2. On June 6, the date that the district court dismissed the counterclaim, it was too late for Woodcock to join Marks without upsetting the June 23 trial date. Under Fed.R.Civ.P. 12(a), Marks would have had twenty days from the time he was served in which to answer the counterclaim.

decision in *Link v. Wabash Railroad Company.* To be sure, the Court there held that in the exercise of a sound discretion a federal judge contemplating dismissal may visit the sins of the lawyer upon the client who has freely selected him. But *Link* and the cases interpreting it have thus far generally approved dismissal of the client's action due to counsel's conduct *only when the attorney has taken a course of protracted neglect.*

569 F.2d at 121 (footnotes omitted) (emphasis added). Because the district court had not been aware of "two items of highly relevant information" that indicated that Jackson's lawyer, in addition to being grossly negligent, had intentionally misled his client by assuring him that the litigation was proceeding smoothly, the *Jackson* panel remanded to the district court to determine whether the attorney's serious derelictions furnished a basis for relief pursuant to Federal Rule of Civil Procedure 60(b)(6), as interpreted in *L. P. Steuart, Inc. v. Matthews,* 329 F.2d 234 (D.C.Cir.), *cert. denied,* 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964).

The rule that follows from *Jackson* is that a party should be relieved of a dismissal resulting from his lawyer's failure to obey a court order if either (1) the attorney's misconduct amounts to something less than "protracted neglect" or (2) the attorney's serious dereliction is compounded by deliberate misrepresentations to the client regarding the status of the case. This rule is based on an interpretation of Federal Rule of Civil Procedure 60(b).[1] Rule 60(b), however, applies only when the relief sought is from a "final judgment, order, or proceeding." Since at the time Woodcock sought relief from the interlocutory order dismissing Count III of his counterclaim it was not a "final order," Rule 60(b) does not control. But it does give us some guidance for, as explained by Professor Moore,

> an adjudication of one or more but less than all of the claims in an action is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims. Such an adjudication would not, therefore, be subject to the *restrictive provisions* of Rule 60(b).

7 Moore's Federal Practice § 60.20, at 243–44 (2d ed. 1978) (emphasis added).

Hence, in this case, where Woodcock sought relief from a non-final order, the district judge was not bound by the "restrictive provisions" of Rule 60(b).[2] Yet the court refused to grant relief here under circumstances where Rule 60(b), as interpreted in *Jackson,* would require it, since Woodcock's counsel's single error could not constitute "protracted neglect." The trial court abused its discretion by so ruling, and I would reverse.

The majority asserts that a district court must have authority to dismiss a case like this "[t]o prevent litigation delay and waste of scarce judicial resources." Maj. op. at 1169. The majority, however, does not explain how a continuance of the trial date here would have resulted in a waste of judicial resources. The district court had ample opportunity to replace this trial with some other judicial business when Woodcock moved for a continuance prior to the scheduled trial date. Protracted delay in

---

1. Rule 60(b) contains the reasons upon which a court may relieve a party of a final judgment. That part of the *Jackson* rule that prevents dismissal except where there has been protracted neglect comes from an interpretation of Rule 60(b)(1), which permits relief because of "excusable neglect"; the other part of the *Jackson* rule—which allows a party to obtain relief from a dismissal where his lawyer is grossly negligent and misrepresents the status of the case—is based on an interpretation of 60(b)(6), which permits relief for "any other reason justifying relief from the operation of the judgment."

Rule 60(b) "operates both as a grant and limitation upon the power of the district court to give relief from a final judgment." 7 Moore's Federal Practice § 60.27[1], at 340 (2d ed. 1978).

2. "The district court has plenary power over its interlocutory orders; may revise them when consonant with equity to do so; and Rule 60(b) does not deal with and is not a limitation upon the broad power." 7 Moore's Federal Practice § 60.27[1], at 339–40 (2d ed. 1978).

litigation can be a serious problem, but in my view the public interest in reducing litigation delay does not outweigh Woodcock's interest in having his substantial claim adjudicated on its merits, especially where there is no allegation that Automated Datatron would have been prejudiced by the delay.

In *Jackson* this court admonished trial judges:

> Trial court dismissal of a lawsuit never heard on its merits is a drastic step, normally to be taken only after unfruitful resort to lesser sanctions. And while appellate review is limited by the binding authority of *Link* to whether judicial discretion has been abused, a sound discretion hardly comprehends a pointless exaction of retribution. Dismissals for misconduct attributable to lawyers and in no wise to their clients invariably penalize the innocent and may let the guilty off scot-free. That curious treatment strikes us as both anomalous and self-defeating. When the client has not personally misbehaved and his opponent in the litigation has not been harmed, the interests of justice are better served by an exercise of discretion in favor of appropriate action against the lawyer as the medium for vindication of the judicial process and protection of the citizenry from future imposition. Public confidence in the legal system is not enhanced when one component punishes blameless litigants for the misdoings of another component of the system; to laymen unfamiliar with the fundamentals of agency law, that can only convey the erroneous impression that lawyers protect other lawyers at the expense of everyone else.

569 F.2d at 123 (footnotes omitted).[3]

Had this admonition been followed here, the dismissal of Woodcock's counterclaim would have been vacated. There is no evidence that Woodcock "personally misbehaved" and no claim by Automated Datatron of prejudice. By voting to affirm the district court, my colleagues have sanctioned the district court's flouting of our decision in *Jackson*. The conduct of Woodcock's lawyer is not to be condoned. It was apparently inexcusable.[4] The *Jackson* precedent in this circuit requires a district court to punish the lawyer directly instead of his innocent client. Since the majority opinion refuses to follow *Jackson* its decision is not entitled to any precedential value. Only an *en banc* court can overrule *Jackson*. *United States v. Jones*, 527 F.2d 817, 829 n.13 (D.C.Cir.1975); *United States v. Caldwell*, 543 F.2d 1333, 1369 n.19 (D.C. Cir.1974) (supplemental opinion on rehearing, *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *Thompson v. Thompson*, 244 F.2d 374, 375 (D.C.Cir.1957).

The majority in this case is also imposing a fatal sanction for non-willful conduct of a lawyer that has *not* prejudiced the opposing party, whereas in our current case involving the Black Panther Party the majority is much more lenient on *willful* refusal of the plaintiff to respond to critical interrogatories.[5] Several reasons are advanced for so doing, principally that alternative sources should first be probed, but in the last analysis the two cases have sufficient similarities so that the two decisions represent a wide variance in what conduct will call forth an

---

**3.** The majority quotes a passage from a First Circuit opinion that affirmed a trial court order dismissing a claim for failure to prosecute, in which that court stated that it "realize[d] that the sins of the attorney are being visited upon the plaintiff." Maj. op. at 1170 (quoting *Pease v. Peters*, 550 F.2d 698, 701 (1st Cir. 1977)). This approach was rejected by this court in *Jackson* in the quoted passage "as both anomalous and self-defeating." 569 F.2d at 123. With all due respect, it is submitted that *Jackson* is the appropriate precedent for this court.

**4.** The majority correctly states that "no reason other than inadvertence or oversight is advanced for the failure to join Marks." Maj. op. at 1170. It should also be added, however, that Woodcock sought an oral hearing in the district court on his motion for a continuance, which was denied by the district court. The record developed at such a hearing might have provided some useful information.

**5.** *Black Panther Party v. Smith*, 661 F.2d 1243, (D.C.Cir. 1981).

extreme punitive sanction.  I therefore dissent.