**BRISTOL PETROLEUM CORPORATION,**
Appellant

v.

**Larry D. HARRIS.**

No. 89-7103.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 30, 1990.

Decided April 20, 1990.

Joseph A. Cerroni, Falls Church, Va., for appellant.

Michael M. Hicks, Washington, D.C., for appellee.

Before RUTH B. GINSBURG, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH B. GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Appellant Bristol Petroleum Corporation (Bristol) challenges the district court's decision to dismiss with prejudice, and not to reinstate, Bristol's contract claim after the corporation disobeyed, without explanation, the court's order to appear through counsel at a status conference, on pain of dismissal. We are satisfied that the district court did not abuse its discretion in exercising its authority effectively to enforce its own orders designed to advance the expeditious

processing of lawsuits on the court's crowded docket. We therefore affirm the district court's disposition.

## I.

On July 13, 1988, Bristol filed a diversity action in the district court to enforce the provisions of a promissory note against Bristol's former attorney, Larry Harris. Harris moved to dismiss, arguing that the debt had been offset by the forgiveness by Harris's law firm of legal fees owed by Bristol. The district court denied the motion to dismiss on September 30, 1988, and set a trial date of May 17, 1989.

On December 19, 1988, Bristol, through its president, Roslyn Hill, discharged the attorney who had been representing the corporation in its suit against Harris. That attorney accordingly petitioned the district court, on December 30, 1988, for permission to withdraw from the case. The attorney notified Bristol of this request; the district court granted the attorney's motion over Harris's opposition on January 17, 1989. At the same time the district court, responding to a request by Harris, ordered "that this case is scheduled for a status conference on February 22, [1989,] at 9:30 a.m., at which plaintiff shall be represented by counsel admitted to practice before this court or the case shall be dismissed." Order, C.A. No. 88–1914 (Jan. 17, 1989).[1] Counsel for Bristol failed to appear at the status conference. The court had received no prior notification of this default. Having been accorded no warning, explanation or excuse for Bristol's nonappearance, the district court dismissed the case with prejudice under FED.R.CIV.P. 41(b).[2]

Bristol's president Hill, in her official capacity, then filed a motion under FED.R. CIV.P. 60(b) to reinstate the action or to amend the dismissal to one without prejudice.[3] That motion constituted Bristol's first and only attempt to justify its unexplained absence from the status conference. In the motion, Hill acknowledged receipt of the district court's January 17 order, but claimed that it "was [not] received by the undersigned [until] Feb. 13, 1989, upon [her] return to California, from an extended business trip." Motion to Alter or Amend Judgment and for Reconsideration, C.A. No. 88–1914 (Mar. 8, 1989), at 1. Hill attributed the delay in her receipt of the court's order to Bristol's relocation of its offices from Los Angeles to Pacific Palisades in mid-January.[4]

Hill did not offer any explanation for Bristol's failure to comply with the district court's order to secure local counsel, except to allude to the "geographical barrier" between the East and West Coasts. *Id.* at 3. Nor did Hill shed any light on why Bristol did not request a postponement of the status conference, or even notify the court of its projected nonattendance, in the eight full days between Hill's acknowledged receipt of the order and the scheduled conference. Hill's motion also neglected to describe any efforts actually made by Bristol to secure a new attorney between Hill's dismissal of the corporation's original counsel on December 19, 1988 and the status conference some eight weeks later. The district court denied the Rule 60(b) motion on March 14, 1989. On appeal, Bristol challenges both the dismissal of its case and the denial of its motion to reinstate.

---

**1.** As a corporation, Bristol could not appear *pro se. See Commercial and R.R. Bank of Vicksburg v. Slocomb, Richards & Co.,* 39 U.S. (14 Pet.) 60, 10 L.Ed. 354 (1840).

**2.** That rule provides that a case may be dismissed "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court." FED.R.CIV.P. 41(b).

**3.** Counsel for Bristol confirmed at oral argument that Hill has a law degree. Hill has not asserted, however, that she is authorized to practice law in the District of Columbia; nor, in her capacity as Bristol's president, could she

properly have represented Bristol in the suit. *See supra* note 1.

**4.** Hill did not state that the order did not arrive at Bristol's offices until February 13, but only that she did not receive it until then because of her "extended" absence on a business trip. The forwarding address label applied by the Los Angeles post office was dated February 3; therefore, the order may well have reached Bristol's offices before Hill first saw it. Even by Hill's own count, however, at least eight full days elapsed between the corporation's receipt of the court's order and the status conference date.

## II.

■ "[W]hen circumstances make such action appropriate," a district court may dismiss an action on its own motion because of a party's failure to comply with court orders designed to ensure orderly prosecution of the case. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). Such dismissals will be disturbed on review only if they are found to constitute an abuse of discretion, *see id.;* refusals to reinstate under Rule 60(b) are reviewable under the same standard. *See Butler v. Pearson*, 636 F.2d 526, 527 (D.C.Cir.1980).

Our review is informed by our recognition that if district court judges are to discharge their heavy case processing responsibilities effectively, "their power to dismiss ... must be more than theoretical." *Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168, 1170 (D.C.Cir. 1981); *see also, e.g., Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1062 (7th Cir.1989) (noting that absent authority on the part of district judges to enforce their own orders, "the court's power to control its docket, and compel attorneys to proceed within the time frame set by the court and not their own would erode and eventually disappear"); *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir.1980) (observing that "unless district judges use the clear power to impose the ultimate sanction when appropriate, exhortations of diligence are impotent"). Authority to dismiss and other sanctions have been entrusted to the district courts to enable district judges to discharge efficiently their front-line responsibility for operating the judicial system. *Cf.* FED.R. CIV.P. 11, Advisory Committee Notes (noting that 1983 amendment expanding the authority of district judges to award sanctions for bad faith litigation was enacted to "discourage dilatory and abusive tactics and help to streamline the litigation process" and in recognition of "the [district] court's responsibility for securing the system's effective operation"); FED.R.CIV.P. 37(b) (authorizing sanctions, including dismissal, for failure to comply with discovery order). Appellate courts, accordingly, should be hesitant to type the exercise of a district court's dismissal authority as an abuse of discretion.

■ This court has recognized that under certain circumstances, dismissal may be an unduly severe sanction for a single episode of misconduct. As a rule, we have noted, dismissal is in order only when lesser sanctions would not serve the interest of justice. *See Automated Datatron*, 659 F.2d at 1170. Considerations relevant to ascertaining when dismissal, rather than a milder disciplinary measure, is warranted include the effect of a plaintiff's dilatory or contumacious conduct on the court's docket, whether the plaintiff's behavior has prejudiced the defendant, and whether deterrence is necessary to protect the integrity of the judicial system. *See Shea v. Donohoe Construction Co., Inc.*, 795 F.2d 1071 (D.C.Cir.1986). This analytical framework, however, is not to be applied woodenly in evaluating the myriad and diverse factors that influence district judges in managing their caseloads. *See Locascio v. Teletype Corp.*, 694 F.2d 497, 499 (7th Cir. 1982) (noting that appellate court "cannot substitute its judgment for that of the trial court" in assessing whether lesser sanctions "either have not been or will not be effective to remedy the dilatory conduct"), *cert. denied*, 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 808 (1983). Our task, then, is to examine all the relevant circumstances surrounding a challenged dismissal to ascertain whether appellate court intervention is warranted to correct an abuse of discretion. On careful review of this record, we conclude that this court's intervention is not in order, for no abuse of discretion occurred.

First of all, this is not a case of an unwitting litigant made to suffer for the sins of her attorney. *Cf. Butler*, 636 F.2d at 631; *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123 (D.C.Cir.1977) (noting that "[d]ismissals for misconduct attributable to lawyers and in no wise to their clients invariably penalize the innocent and may let the guilty off scot-free"). Bristol was aware that it would need to hire new

counsel to prosecute this case at least from the time that it discharged its first attorney, and was on notice for at least a week that the case would be dismissed if it did not find a new lawyer (or, at a minimum, plausibly and promptly account for its failure to engage counsel). *Cf. Shea*, 795 F.2d at 1078 (noting that "[w]e look disfavorably upon dismissals as sanctions for attorney misconduct or delay *unless the client himself has been made aware of the problem, usually through notice from the trial court*") (emphasis in original).

Nor do our cases involving *pro se* litigants require the conclusion that the district court abused its discretion in dismissing Bristol's suit. In *Camps v. C & P Telephone Co.*, 692 F.2d 120, 122 (D.C.Cir. 1981), for example, a *pro se* litigant's case had been dismissed as a sanction for the litigant's appearance "10 to 30 minutes late for [a] status call." The court stated, however, that "[w]e might well assess the situation differently ... especially if the court, in addition to pinpointing his next appearance date, had informed Camp specifically of the consequences of late arrival." *Id.* at 125. In contrast, as noted above, Bristol was on notice of the risk it was running by failing to enter an appearance through counsel. Moreover, Hill, as a law-trained individual, unlike the unsophisticated *pro se* litigant, can be presumed to have some acquaintance with the rules of the judicial process and the consequences risked by their infringement.

Bristol's apparent lack of any effort to comply with the court's order also distinguishes this case from those reversing dismissals for the errors and omissions of a non-*pro se* plaintiff. For example, in *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 187–88 (D.C.Cir.1985), this court reversed a

dismissal ordered when a plaintiff requested a continuance on the weekend before the scheduled trial date. The court determined that Trakas had advanced a credible need for the continuance—lack of funds to travel to the District for the trial—and that the defendant had not disproved Trakas's claim that her inability to be present was beyond her control. *See id.* at 188. Here, in contrast, Bristol never requested a deferral of the status conference nor warned the court of its projected absence from the conference; furthermore, by postponing the dismissal of its previous attorney until after it obtained new counsel, Bristol could have averted the professed cause of its inability to appear. *Cf. Grochal v. Aeration Processes, Inc.*, 797 F.2d 1093, 1097 (D.C.Cir.1986) (dismissal reversed when plaintiff justifiably requested a continuance), *vacated on other grounds*, 812 F.2d 745 (1987); *Cohen v. Carnival Cruise Lines, Inc.*, 782 F.2d 923, 925 (11th Cir. 1986) (dismissal for failure to obtain local counsel reversed when plaintiff "did attempt to retain counsel").[5]

Nor did the district court abuse its discretion in refusing to reinstate Bristol's suit. In its Rule 60(b) motion, Bristol offered no colorable reasons for its failure to enter an appearance or otherwise communicate with the court. *Cf. Jackson*, 569 F.2d at 122. Indeed, Hill admitted having received actual notice of the appearance requirement and the prospect of dismissal eight full days before the date of the status conference. Furthermore, Bristol's Rule 60(b) motion was submitted, not by hired "counsel admitted to practice before [the district] court," as the district judge had ordered, but by Bristol's president, Hill, again with no colorable explanation of why Bristol could not comply with the district judge's order.

---

**5.** We recognize that, in several cases affirming pre-trial dismissals, courts have featured the fact that the party's delay occurred close to the time of trial and threatened to upset the court's carefully planned calendar. *See, e.g., Automated Datatron*, 659 F.2d at 1170. There is no *per se* rule, however, that dismissal is proper only in eve-of-trial delay situations. Given the plaintiff's extraordinary inattentiveness on which this case turned in the district court, our deferential standard of review is determinative.

## CONCLUSION

Because the district court did not abuse its discretion in dismissing and refusing to reinstate Bristol's case, that court's final judgment is *Affirmed.*