Judy RIPALDA, Appellant,

v.

AMERICAN OPERATIONS
CORPORATION, et al.

No. 91–7068.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 9, 1992.

Decided Oct. 20, 1992.

David P. Sutton, with whom David L. Hilton, Washington, D.C., was on the brief, for appellant.

Donald M. Caplan, Bethesda, Md., for appellee System Planning Corp.

Before BUCKLEY, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The appellant Judy Ripalda, a resident of Virginia, brought this tort action in district court against American Operations Corporation (AOC), a Delaware corporation, and Kleen Master, Inc., a Florida corporation. The district court dismissed the suit, and rejected the plaintiff's motion for reconsideration on three grounds: (1) lack of diversity between plaintiff and defendant AOC; (2) failure separately to establish the jurisdictional amount with respect to the remaining defendant Kleen Master; ? .d (3) noncompliance with an earlier court order. For the reasons stated below, we reverse.

## I. BACKGROUND

Ripalda alleges that in August 1987, while in a government building in Washington, D.C., she slipped and fell when she stepped on a fluid that had leaked onto the floor from an air conditioning unit while it was being serviced by employees of AOC. Employees of Kleen Master then arrived to clean the floor. When she again approached the area, a Kleen Master employee directed her to walk on a particular part of the floor, whereupon she again slipped and fell, causing her further injury.

In July 1990 Ripalda filed a negligence action against AOC and Kleen Master in federal district court. She invoked the diversity jurisdiction of the district court under 28 U.S.C. § 1332, and claimed that the defendants were jointly and severally liable for her injuries in the amount of $250,000. In lieu of a responsive pleading from AOC, counsel for Ripalda received a letter from counsel for System Planning Corporation, stating that AOC was "not in existence"; the original corporation of that name had been merged into System Planning in March 1987—more than four months prior to the alleged accident—and while a second AOC had been incorporated in April 1987, in order "to protect the name," its charter had been surrendered in July 1989—a year prior to the filing of the suit. (When necessary to distinguish between the two corporations, we will refer to them as "AOC No.1" or "AOC No.2.)" Counsel for System Planning suggested that if Ripalda were to amend her complaint to name that company as a defendant, it would then file a responsive pleading.

Ripalda duly amended her complaint to substitute System Planning for AOC, again naming Kleen Master a co-defendant. System Planning then filed a motion to dismiss the complaint for lack of subject matter jurisdiction, contending that because its principle place of business was in Ripalda's state of residence (Virginia), the case lacked the complete diversity required for jurisdiction under 28 U.S.C. § 1332.

The district court dismissed the case for want of diversity. The court also indicated that the plaintiff could not establish diversity by reinstating her claim against AOC because that corporation had been dissolved a year prior to the filing of her suit, whereas the parties must be diverse when the complaint is filed. "Because the limitations period [had] apparently expired absent any tolling," the court granted Ripalda leave to replead, but added that "the only basis for maintaining suit in this Court is against Kleen Master alone...." (Memorandum and Order, Feb. 7, 1991.)

Ripalda did file a second amended complaint. Contrary to the court's direction, however, the new complaint named not only Kleen Master but also AOC. Characterizing the second amended complaint as an "audacious and totally unsuccessful attempt to avoid the requirements" of its February 7 order, the district court dismissed the case sua sponte. The court again explained that the substitution of AOC for System Planning could not establish diversity because AOC had been dissolved prior to the filing of the suit. The court also held that Ripalda had failed to demonstrate that the claim against Kleen Master by itself involved the requisite jurisdictional amount. (Memorandum and Order, February 25, 1991.)

Ripalda filed a motion for reconsideration of the February 7 and February 25 orders. In support of this motion, Ripalda cited for the first time a section of the Delaware General Corporation Law providing that, "[a]ll corporations, whether they expire by their own limitations or are other-

wise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution ..., bodies corporate for the purpose of prosecuting and defending suits...." 8 Del.Code Ann. § 278. Relying upon this statute she argued that AOC, despite its earlier dissolution, was still suable as a Delaware corporation at the time she filed her complaint.

The court promptly denied reconsideration, offering two grounds. First, the court held, "[t]he fact that a defunct corporation is still suable under Delaware law cannot control this federal court's diversity jurisdiction where diversity at [the] time of suit does not exist." Second, after noting the claim of the plaintiff's counsel "that he did not believe the Court had barred him from suing the *2nd* [AOC]," the court held that Ripalda's disregard of the February 7 order independently justified dismissal: "Plaintiff's counsel disregarded the Court's explicit rulings in drafting the Second Amended Complaint by not proceeding against Kleen Master alone. If counsel considered those ruling in error, the appropriate course would have been to file a motion for reconsideration at that stage...." (Memorandum and Order, March 22, 1991.)

Ripalda appeals the orders dismissing the case and denying reconsideration. During the pendency of her appeal, Ripalda and Kleen Master settled their dispute, leaving only AOC as a defendant.

## II. ANALYSIS

On appeal, Ripalda challenges as an abuse of discretion the district court's refusal, on disciplinary grounds, to grant reconsideration of its orders dismissing the case. She then renews her claim that the second amended complaint meets the diversity requirement for federal jurisdiction.

### A. *Abuse of Discretion*

 The district court has the "inherent power" to dismiss a case *sua sponte* when a party fails to comply with a court order designed to advance the orderly prosecution of the case. *Link v. Wabash R.*, 370 U.S. 626, 630, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). We review its decision to dismiss—and by extension its refusal to reinstate—a case only for an abuse of discretion. *See Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C.Cir.1990); *Butler v. Pearson*, 636 F.2d 526, 527 (D.C.Cir. 1980). In light of the district court's "front-line responsibility for operating the judicial system," moreover, we are properly "hesitant" to find that it has abused its discretion. *Bristol Petroleum*, 901 F.2d at 167.

On the other hand, dismissal is a "drastic step, normally to be taken only after unfruitful resort to lesser sanctions." *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123 (D.C.Cir.1977); *accord Bristol Petroleum*, 901 F.2d at 167 ("As a rule, we have noted, dismissal is in order only when lesser sanctions would not serve the interests of justice"); *Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168, 1170 (D.C.Cir.1981); *Butler*, 636 F.2d at 529; 9 C. Wright & A. Miller, Federal Practice and Procedure § 2369, at 193–196 (1971 & Supp.1992) (collecting cases). A review of our prior cases indicates that the district court's first-resort dismissal of this case was an abuse of discretion.

In *Shea v. Donohoe Construction Co.*, 795 F.2d 1071 (D.C.Cir.1986), we reviewed and summarized what our past decisions revealed to be the three basic justifications for dismissing an action because of counsel's misconduct:

First, dismissal is necessary at times because the other party in the case has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case. Second, dismissal may be appropriate where resort to any less drastic sanctions would not mitigate the severe burden that the misconduct has placed on the judicial system. Finally, dismissal may, on certain occasions, serve as an ultimate sanction, aimed at punishing abuses of the system and deterring future misconduct.

*Id.* at 1074. *See also Bristol Petroleum*, 901 F.2d at 167. In *Shea* we also noted that "the factors to be addressed by the trial judge in considering the propriety of

dismissal differ depending on which of these purposes is to be served." 795 F.2d at 1074.

■ In the present case, counsel's departure from the court's instructions neither prejudiced the defendants nor imposed significantly upon the judicial system. Thus, the only justification for the dismissal was to punish counsel in order to deter him (and others) from future misconduct. While the client must of course take responsibility for the conduct of her "freely selected agent," see Link, 370 U.S. at 633–34, 82 S.Ct. at 1390, dismissal of an action for attorney misconduct may be a "disproportionate sanction," where, as here, there has been no harm to the defendants or to the judicial system and the client had no notice of the misconduct. See Shea, 795 F.2d at 1077–78 ("We look disfavorably upon dismissals as sanctions for attorney misconduct or delay unless the client himself had been made aware of the problem, usually through notice from the trial court") (emphasis in original); Jackson, 569 F.2d at 123 ("Dismissals for misconduct attributable to lawyers and in no wise to their clients invariably penalize the innocent and may let the guilty off scot-free").

Here neither the defendant nor the judicial system has been harmed and there has been no suggestion that Ripalda was personally responsible for her attorney's mistake. In such circumstances a lesser, or more accurately targeted, sanction than dismissal would just as effectively punish and deter counsel while avoiding harm to an innocent client. See Shea, 795 F.2d at 1078. See also Jackson, 569 F.2d at 123 ("When the client has not personally misbehaved and his opponent in the litigation has not been harmed, the interests of justice are better served by an exercise of discretion in favor of appropriate action against the lawyer").

The inappropriateness of dismissal in this case is reinforced by this circuit's frequent holding that dismissal is "rarely if ever appropriate when there is but a single instance of attorney misconduct." Camps v. C & P Telephone Co., 692 F.2d 120, 122 (D.C.Cir.1981) (citing Butler, 636 F.2d at 529; Jackson, 569 F.2d at 120). In the present case the district court identified only one instance of such misconduct: Ripalda's filing a second amended complaint in which she named AOC as a defendant and failed separately to specify the amount of damages claimed against Kleen Master. The two cases in which this circuit has upheld dismissals upon the basis of a single incident of misconduct involved disruption of the judicial system or clear client responsibility for the misconduct; thus, neither is controlling here.

In Automated Datatron, the court had ordered the plaintiff to join a necessary party. Upon being reminded of that order a week later, the plaintiff's counsel had assured the court that he would "file the appropriate pleadings." 659 F.2d at 1169. Six months later the court learned that counsel had not done so, with the result that the court had either to postpone the trial or to dismiss the single count to which the missing party was necessary. The prolonged nature of counsel's noncompliance despite the court's reminder, the potential prejudice to the other party and the disruption of the court's schedule if trial were postponed, and the absence of any explanation (let alone justification) even when the plaintiff moved for reconsideration, all distinguish the transgression at issue in Automated Datatron from that in the present case.

Bristol Petroleum involved blatant noncompliance with a court order on the part of a corporate president with a law degree. See 901 F.2d at 166 n. 3, 167 ("[T]his is not a case of an unwitting litigant made to suffer for the sins of her attorney"). After the withdrawal of her corporation's attorney, the president had been specifically advised by the court that at the next status call her company "shall be represented by counsel admitted to practice before this court or the case shall be dismissed." Id. at 166. Not only was the plaintiff corporation unrepresented at that status call, even its motion for reconsideration was submitted by its president and not by counsel, "again with no colorable explanation" for the plaintiff's noncompliance. Id. at 168. In these circumstances, it was clear enough

that the district court did not abuse its discretion in dismissing the case, and clearer still that it need not have granted reconsideration.

In sum, it was an abuse of discretion for the district court to deny reconsideration of its decision dismissing this action as a sanction for counsel's apparent departure from the court's instructions. Accordingly, we must go on to examine the court's other reason for dismissing the case and denying reconsideration, *viz.* want of diversity between Ripalda and AOC.

### B. *Diversity*

As the district court stated, the parties to a diversity action must be diverse at the time the action is filed. *See Freeport, McMoran, Inc. v. K N Energy, Inc.*, 498 U.S. 426, ——, 111 S.Ct. 858, 860, 112 L.Ed.2d 951 (1991); *Conolly v. Taylor*, 27 U.S. (2 Pet.) 556, 7 L.Ed. 518 (1829). In the present case, the question is whether a state statute extending the life of a dissolved corporation for the purpose of being sued also preserves the corporation as a citizen of the state of incorporation for the purpose of determining diversity of citizenship.

■ As a general matter, a corporation's capacity to sue and be sued in a federal court is "determined by the law under which it was organized." Fed.R.Civ.P. 17(b); *see* 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1561, at 447 (1990). In particular, state corporate law determines the suability of a dissolved corporation such as AOC. *See Oklahoma Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 260, 47 S.Ct. 391, 392, 71 L.Ed. 634 (1927) (capacity of dissolved corporation "concerns the fundamental law of the corporation enacted by the state which brought the corporation into being"); Wright, Miller & Kane, *supra* § 1563, at 455 ("The federal courts have held that the capacity of a dissolved corporation to sue and be sued is determined by the law of the state in which it was organized").

■ It follows from these principles that federal courts should look to state law in order to determine whether a corporation is extant at the time a suit is filed against it. As noted, § 278 of the Delaware General Corporation Law provides that a corporation continues to exist as a "bod[y] corporate for the purpose of prosecuting and defending suits" for three years after it has nominally been dissolved. 8 Del.Code Ann. § 278. Thus, despite having already been dissolved for other purposes, under Delaware law AOC continued in existence at the time this action was filed. To hold that its Delaware citizenship did not likewise persist through that time for the purpose of establishing diversity jurisdiction would frustrate that State's purpose of facilitating the resolution of claims by and against the corporation and would serve no federal interest. No other federal court before the decision here under review has thought otherwise. *See Illinois Central Gulf R. v. Arbox Three Corporation*, 700 F.Supp. 389 (N.D.Ill.1988) (dissolved Delaware corporation continues as Delaware citizen for purposes of diversity, pursuant to § 278); *Muro v. Abel Freight Lines, Inc.*, 1992 WL 67816 (N.D.Ill.) (same pursuant to Illinois statute); *Scholnick v. Schatz*, 708 F.Supp. 57, 58 (S.D.N.Y.1989) (same pursuant to New York statute); *Talarico v. Roche Laboratories*, 1989 WL 65052 (N.D.Ill.) (same pursuant to Illinois statute); *Silk v. Nicole Originals*, 1989 WL 153549 (N.D.Ill.) (same pursuant to Illinois statute); *Products Engineering Co. v. OKC Corp.*, 590 F.Supp. 547, 551 (E.D.La. 1984) (same pursuant to § 278), *rev'd on other grounds sub. nom. Lone Star Industries, Inc. v. Redwine*, 757 F.2d 1544 (5th Cir.1985); *Vincent v. DeMaria Porsche–Audi, Inc.*, 532 F.Supp. 1035, 1038–39 (S.D.Fla.1982) (same pursuant to Florida statute); *Ross v. Venezuelan–American Independent Oil Producers Ass'n, Inc.*, 230 F.Supp. 701 (D.Del.1964) (same pursuant to § 278). Indeed, were it otherwise, federal jurisdiction would vary depending upon the purely formal distinction between one state that extends the period of suability after dissolution and another that imposes a waiting period for dissolution. *Cf.* Minn.Stat.Ann. § 317A.811

(imposing 45 day waiting period before dissolution of a nonprofit corporation).

Recall that AOC No.2 formally withdrew from Virginia in April 1989. With its authority to transact business in that state thus revoked, we presume—absent any indication in the record to the contrary—that if it still had any principal place of business it was not in Virginia. Moreover, AOC No.2 was dissolved in July 1989. Therefore, when it was sued in 1990 AOC was still a citizen of Delaware by virtue of § 278, and apparently was not a citizen of Virginia, so that its presence as a defendant did not destroy the complete diversity necessary to the maintenance of this suit.

Quite apart from the question of AOC's citizenship, System Planning argues that AOC No.2 is not a proper party defendant because, although it had been incorporated as a subsidiary of System Planning in April 1987, AOC No.2 "had no employees, agents or servants" who could have caused Ripalda's injuries. *See* Affidavit of Jean G. Taylor. Thus, per its brief, "the proper party to have been sued was System Planning Corporation, as its agents', employees' and servants' alleged negligence caused injury to Ripalda." Of course, if System Planning were named a defendant, then the case would again lack complete diversity.

Ripalda responds that AOC No.2 continued to operate during the period of the accident. As evidence, she cites a letter dated November 16, 1987—after the disappearance by merger of AOC No.1 and the incorporation of AOC No.2—written on the stationary of "American Operations Corporation," "A Subsidiary of System Planning Corporation." The letter, which is signed by one Jack Mencia as "Manager" of AOC, forwards a letter from "our Claims Administrator ... which acknowledges ... our having forwarded your ... claim to their office for further investigation."

The apparent conflict between the Taylor affidavit and the Mencia letter arose only when System Planning filed its opposition, supported by the Taylor affidavit, to Ripalda's motion for reconsideration. Having determined that it did not have jurisdiction of the case, the district court had no occa-

sion to resolve this factual issue. We leave it to the district court on remand, therefore, to deal with the question in the first instance.

### III. Conclusion

The district court abused its discretion in denying reconsideration of its order dismissing the plaintiff's case on the ground that her attorney had failed to follow the court's direction in amending the complaint. The court was of course correct that the attorney should instead have asked the court to reconsider its direction, but absent any apparent prejudice to any defendant or to the court, dismissal was clearly an excessive sanction for this single failing.

The district court erred in refusing to reinstate the complaint against AOC on the ground that Delaware corporation law does not perpetuate the citizenship of an otherwise dissolved corporation for the purpose of establishing diversity jurisdiction. Insofar as the court's decision was based upon Ripalda's failure, in the second amended complaint, to establish that her claim against Kleen Master separately met the amount in controversy requirement of § 1332, the settlement between Ripalda and Kleen Master during the pendency of this appeal has mooted that issue. Accordingly, the judgment of the district court is vacated and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*