SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

HOLLYWOOD TRENZ, INC., Edward
Showalter, Tracy Braime, and Robert
E. Burton, Defendants.

No. 98–1106 RMU.

United States District Court,
District of Columbia.

Jan. 5, 2001.

Antonia Chion, Mark Alan Adler, Securities & Exchange Commission, Division of Enforcement, Washington, DC, for Securities and Exchange Commission.

David Patrick Durbin, Jordan, Coyne & Savits, Washington, DC, Joseph E. Altschul, Altschul & Landy, P.A., Weston, FL, for Hollywood Trenz, Inc., Edward R. Showalter, Tracy A. Braime.

Joseph E. Altschul, Altschul & Landy, P.A., Weston, Fl, for Star Entertainment Group, Inc.

## MEMORANDUM OPINION

URBINA, District Judge.

**Setting Forth Reasons for Finding that Defendant Edward Showalter is in Default**

## I. INTRODUCTION

The Securities and Exchange Commission ("SEC" or "Commission") commenced this securities-fraud action more than two and a half years ago, alleging that the defendants had orchestrated two fraudulent schemes to

raise capital in violation of the federal securities laws. The SEC sought permanent injunctions against the defendants, as well as disgorgement, civil penalties, and a permanent officer-and-director bar against defendant Edward Showalter. Without admitting or denying any of the allegations in the complaint, two defendants, Hollywood Trenz and Robert Burton, consented to entries of final judgment against them. The other two defendants, Edward Showalter and Tracy Braime, filed answers in which they denied the SEC's allegations.

This matter is now before the court on the SEC's oral motion that the court find that defendant Showalter is in default. Throughout the course of this litigation, Edward Showalter has consistently ignored the court's instructions and defied its orders. At a status hearing held on December 4, 2000, at which Showalter failed to appear despite being sent notice, the court determined that Showalter was in default. The purpose of this Memorandum Opinion is to set forth the reasons underlying the finding that Mr. Showalter is in default and to support the entry of default made by the court clerk.

## II. BACKGROUND

Hollywood Trenz, a publicly held Delaware corporation headquartered in Fort Lauderdale, Florida, is engaged in the development of family-entertainment restaurants with a Hollywood theme, though at the time the SEC initiated this suit, it had not completed construction of any such restaurants. See Compl. ¶ 10. Edward Showalter has been the president, chief executive officer, chief financial officer, and chairman of the board of Hollywood Trenz since 1993. See id. ¶ 11. Tracy Braime, who married Mr. Showalter in September 1994, worked as an interior design consultant for Hollywood Trenz during 1995 and 1996. See id. ¶ 13.

In its complaint, the SEC alleges that Showalter orchestrated two fraudulent schemes to raise capital illegally. See Compl. ¶ 1. According to the SEC, in the first scheme, Hollywood Trenz materially overstated the value of the primary asset of a wholly owned subsidiary, a portfolio of defaulted bank loans, in reports filed with the SEC and disseminated to the public. See id. ¶ 2. In the second scheme, Hollywood Trenz fraudulently raised millions of dollars by issuing Hollywood Trenz stock, pursuant to Form S-8 registration statements, to "consultants," purportedly to compensate them for bona fide services to Hollywood Trenz.[1] See id. ¶ 3. The SEC alleges that the majority of the S-8 stock was used to raise capital for Hollywood Trenz by using the consultants as conduits through which Hollywood Trenz distributed the shares to the public. See id. The SEC further alleges that Showalter caused Hollywood Trenz's periodic reports filed with the Commission, as well as Hollywood Trenz's books and records, to misstate or fail to disclose other material information, including the amount of Showalter's executive compensation and certain related party transactions. See id. ¶ 4.

On June 8, 2000, the court issued a scheduling order setting trial in this matter for December 4, 2000. As that date approached, however, the defendants' repeated defiance of court orders raised the possibility that the defendants would not appear for trial. Out of an abundance of caution, the court vacated the trial and set a status hearing for the same date. In its order vacating the trial date and setting a status hearing, the court warned the parties that "the court may enter default judgment against any party who fails to appear at the status hearing now set for December 4, 2000." See Order dated Nov. 21, 2000. Although defendant Braime participated in the status hearing by teleconference, defendant Showalter made no appearance, telephonic or otherwise. Nor did he contact the court since that time to explain his failure to appear. Accordingly, the court found that Mr. Showalter was in default, and instructed the SEC to submit proposed findings of fact and conclusions of law in support of this finding. As the court's own findings of facts will illustrate, Mr. Showalter's behav-

---

1. Form S-8 is an SEC form that, upon filing, provides for the registration of company stock for the sole purpose of compensating employees and consultants, provided that the consultants' services are not rendered in connection with the offer or sale of securities in a capital-raising transaction. See Compl. ¶ 3.

ior evinces repeated and willful disregard of the court's orders in this case, warranting the finding that he is in default.

## III. FINDINGS OF FACT

### A. Defendant Showalter was Aware of the Court's Scheduling Orders

At a status hearing on June 8, 2000, the court issued a Pretrial Scheduling and Procedures Order, setting forth, among other things, a trial in this case for December 4, 2000. At the same status hearing, the court admonished Mr. Showalter's counsel that Mr. Showalter needed to give his full attention to the case, restructure his priorities, and personally attend a mediation session with United States Magistrate Judge Alan Kay on June 29, 2000. Mr. Showalter's appearance at the June 29, 2000 mediation session with Magistrate Judge Kay indicates that he was aware of the schedule in this case.

On August 11, 2000, the filing deadline for the parties' joint pretrial statement, Mr. Showalter's attorneys (lead counsel Joseph Altschul, Esq., and local counsel, David Durbin, Esq.) filed motions to withdraw as counsel. In his motion to withdraw, Joseph Altschul advised the court that he had served Mr. Showalter at his last known address "with a copy of this motion [to withdraw] and a notice advising [the defendants] to obtain other counsel, or if the party intends to conduct the case *pro se* or to object to the withdrawal, to do so by notifying the Clerk in writing within five days of service of this motion." *See* Altschul, Landy & Collier, P.A.'s Motion to Withdraw as Counsel ¶ 5.

On August 22, 2000, at a pretrial conference, Mr. Altschul advised the court that Mr. Showalter was aware of the December trial date and that Mr. Showalter wanted to obtain new counsel. Mr. Altschul confirmed that he had notified his clients (Braime and Showalter) of his motion to withdraw and had not received any objection. Mr. Altschul further informed the court that Mr. Showalter had received copies of all documents in this case by facsimile and that it was his practice to keep Mr. Showalter apprised of all developments in the case.

At the August 22 pretrial conference, the court denied without prejudice defense

counsels' motion to withdraw. The court attempted to reach Mr. Showalter by telephone, at a number provided by Mr. Altschul, but was unsuccessful. Consequently, the court ordered defendant Showalter to appear by telephone for a hearing with the court and counsel on September 8, 2000 at 9:00 a.m. so that the court could ascertain, among other things, Mr. Showalter's current address and whether Mr. Showalter was going to defend this case (either by obtaining new counsel or by proceeding *pro se*). The court expressed its concern that Mr. Showalter was playing games with the court and emphasized to Mr. Showalter's attorneys the need for Mr. Showalter to participate in the telephone conference. At some point thereafter, Mr. Showalter's attorney advised him of the court's August 22, 2000 order that Mr. Showalter appear by telephone on September 8, 2000. *See* Altschul, Landy & Collier, P.A.'s Renewed Motion to Withdraw as Counsel, dated October 6, 2000 ("Altschul Renewed Motion") ¶ 3.

### B. Defendant Showalter Violated the Court's August 22, 2000 Order to Appear by Telephone at a Hearing on September 8, 2000

On September 8, 2000 at 9:00 a.m., the court convened a telephonic conference call with counsel for Mr. Showalter and the SEC, during which the court attempted to contact Mr. Showalter at telephone numbers provided by Mr. Altschul. At the first telephone number (for a location in Beirut, Lebanon), the court reached a recording in French, English, and Arabic indicating that the number was not in service. At the second telephone number, apparently Mr. Showalter's cellular telephone in Lebanon, the court received a message that the telephone was out of area.

By failing to appear at the telephonic conference call, Mr. Showalter violated the court's August 22, 2000 order.

### C. Defendant Showalter Violated the Court's September 7, 2000 Memorandum Order by Failing to Produce Documents and by Failing to Attend his Deposition

On September 7, 2000, Magistrate Judge Alan Kay issued a Memorandum Order

granting the SEC's motion to compel production of documents and requiring Showalter, within ten days of the entry of the order, to:

> (1) produce to the SEC all documents in his possession, custody or control that are responsive to the subpoena issued to him, dated June 20, 2000, wherever those documents be located ..., and (2) attend a deposition at the Securities and Exchange Commission ... to answer questions about his document production.

Memorandum Order dated Sept. 7, 2000. In addition, Judge Kay ordered Star Entertainment Group, Inc., a company controlled by Mr. Showalter and for which he was an agent, to produce to the SEC all documents responsive to the subpoena issued to Star. *See id.* Judge Kay further ordered Star's custodian of records to attend a deposition regarding the production of the records. *See id.* At present, neither Showalter nor Star has provided any documents to the SEC, and indeed, neither has responded at all to the subpoenas.

Pursuant to Judge Kay's Memorandum Order, the SEC also duly noticed depositions of Mr. Showalter's and Star's custodian of records for September 18, 2000 at the SEC's offices in Washington, D.C. *See* 9/18/00 Dep. Tr. 5–6 (Ex. B to Plaintiff's Reply Memorandum, dated September 29, 2000, and exhibits thereto). Mr. Showalter and Star (as well as their counsel) failed to appear at the court-ordered depositions. *See id.* at 4–8. After SEC counsel contacted Mr. Showalter's counsel by telephone from Mr. Showalter's scheduled deposition on September 18, 2000, Mr. Altschul advised SEC counsel for the first time that he informed Mr. Showalter in a telephone conversation on September 13, 2000 about the depositions, and that Mr. Showalter and Star would not be appearing at the depositions. *See id.* at 2–9.

### D. Defendant Showalter Violated the Court's September 29, 2000 Order Awarding Expenses to the SEC

On September 30, 2000, Judge Kay ordered Mr. Showalter and Joseph Altschul, jointly and severally, to "pay to the Securities and Exchange Commission its reasonable expenses incurred in making its motion for an order to compel, including its attorney's fees, in the amount of $5,600, within thirty days of the date of this Order." *See* Order dated Sept. 30, 2000. To date, defendant Showalter has not paid any money to the SEC.

### E. Defendant Showalter Violated the Court's November 21, 2000 Order

On November 7, 2000, the court granted defense counsels' renewed motions to withdraw. Thereafter, on November 21, 2000, the court issued an order vacating the December 4, 2000 trial date and scheduled a status hearing for December 4, 2000 at 10:00 a.m. The court further ordered that "the court may enter default judgment against any party who fails to appear at the status hearing now set for December 4, 2000." *See* Order dated Nov. 21, 2000.

The SEC made repeated efforts to serve Mr. Showalter with a copy of the court's November 21, 2000 order.[2] On November 22, 2000, the SEC sent a copy of the November 21, 2000 Order by first-class mail and Federal Express to Mr. Showalter at his last known address on Stoney Creek Drive in Las Vegas, Nevada. Mr. Altschul provided this address for Mr. Showalter in his August 11, 2000 motion to withdraw. The SEC also sent a copy of the Order by first-class mail and Federal Express to Mr. Showalter at his last known business address on Sahara Avenue in Las Vegas, Nevada. Between November 22 and November 28, 2000, the SEC attempted to send a copy of the Order to Mr. Showalter through his last known facsimile number in Beirut, Lebanon, which Mr. Altschul provided to the SEC and the court on September 8, 2000. Finally, on November 27, 2000, the SEC sent a copy of the Order by Federal Express to Mr. Showalter, c/o Aboukheir, Khoury & Metni, a law firm located in Beirut, Lebanon. On December 4,

---

2. As the SEC notes in its Proposed Findings of Fact and Conclusions of Law, a party has an affirmative obligation to provide the court with "[n]otice of change in address or telephone number ... within 10 days of the change." Local Civil Rule 11.1. Mr. Showalter has not complied with this requirement.

2000, the law firm acknowledged that it received the faxed order and advised the SEC that "[o]ur representation of Mr. Edward Showalter is limited to one matter pending before the Courts in Lebanon and therefore, we have no authority to represent him in the matter of SEC v. Hollywood Trenz, Inc., et al., Civil Action No. 98–1106(RMU), and that Mr. Showalter did not leave with us any forwarding address."

On December 4, 2000, the court held a status hearing. Mr. Showalter failed to appear at the hearing, even though he had been aware for months that trial was scheduled to begin on that day. Mr. Showalter also failed to make any effort to contact the court before the December 4, 2000 conference. Thus, at the December 4, 2000 hearing, the SEC asked the court to find Mr. Showalter in default.

## V. CONCLUSIONS OF LAW

■ Under the Federal Rules of Civil Procedure, if a party "fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference," the court may, in its discretion, levy various sanctions against the disobedient party, including a judgment by default. See FED. R. CIV. P. 16(f) and FED. R. CIV. P. 37(b)(2)(C). Sanctions are integral to the operation of the judicial system. As the D.C. Circuit has stated, sanctions "have been entrusted to the district courts to enable district judges to discharge efficiently their front-line responsibility for operating the judicial system." Bristol Petroleum Corp. v. Harris, 901 F.2d 165, 165–66 (D.C.Cir.1990) (upholding dismissal for plaintiff's failure to appear through counsel at a status conference). The most severe "sanctions ... must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).

■ A default judgment is a drastic sanction. In many cases, the imposition of less severe sanctions, such as the award of attorney's fees, may be "sufficiently effective in alerting an irresponsible litigant to the seriousness of his or her neglect, protecting the interests of the other litigants in the case, and vindicating the integrity of the court." See C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1209 (7th Cir.1984). In those cases where a court orders a dismissal or enters a default judgment, the party typically has engaged in a pattern of disobedience or noncompliance with court orders, including failing to appear at scheduled conferences, so that the court concludes that no lesser sanction is warranted. See 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE 2d, § 1531 at 312.

■ Mr. Showalter's consistent disregard for his responsibilities to the court indicates that no lesser sanction than a default judgment would be effective in this case. The court has already fired numerous warning shots, to no avail. Mr. Showalter has engaged in a pattern of repeated, willful violations of the court's orders. He has failed to appear for court-scheduled depositions and hearings, he has violated the court's order to provide discovery, and he has not paid court-ordered expenses to the SEC. Even Mr. Showalter's own attorneys, prior to their withdrawal, stated that Mr. Showalter "does not follow our advice" and "refuses to follow court orders." See Affidavit of Nancy Landy, Esq., in Support of Renewed Motion to Withdraw, dated October 13, 2000, ¶ 3. For these reasons, the court finds that Edward Showalter is in default.

## VI. CONCLUSION

For the reasons stated herein, the court finds that Edward Showalter is in default. The SEC's motion for entry of default judgment pursuant to Federal Rule of Civil Procedure 55, filed by the SEC on January 4, 2001, is now ripe for consideration. The court will consider the SEC's memoranda, declarations and evidence in support of the entry of default judgment, in order to determine the appropriate monetary and injunctive relief.