# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 20, 2012          Decided July 27, 2012

No. 11-5146

UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT
OF JUSTICE, ET AL.,
APPELLEES

v.

PHILIP MORRIS USA INC., FORMERLY KNOWN AS PHILIP
MORRIS INCORPORATED, ET AL.,
APPELLANTS

AMERICAN TOBACCO COMPANY, DIRECTLY AND AS
SUCCESSOR TO THE TOBACCO INTEREST OF AMERICAN
BRANDS, INC., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:99-cv-02496)

———

*Noel J. Francisco* argued the cause for appellants. With him on the briefs were *Robert F. McDermott*, *Peter J. Biersteker*, *Miguel A. Estrada*, *Amir C. Tayrani*, *Michael B. Minton*, *Bruce D. Ryder*, and *A. Elizabeth Blackwell*. *Dace C. Martinez* entered an appearance.

*Sarang Vijay Damle*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Michael F. Hertz*, Deputy Assistant Attorney General, and *Mark B. Stern* and *Alisa B. Klein*, Attorneys. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Howard M. Crystal* and *Katherine A. Meyer* were on the brief for appellees Tobacco-Free Kids Action Fund, et al.

Before: SENTELLE, *Chief Judge*, BROWN, *Circuit Judge*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Appellant tobacco companies seek review of a district court order clarifying an injunction requiring appellants to disclose marketing data to the government. Appellants claim that the clarification of the injunction actually effects a modification of the requirements. Our jurisdiction over this interlocutory appeal is dependent on the district court having modified the injunction. Because we conclude that it did not, we dismiss the appeal for lack of jurisdiction.

**I.**

In 1999, the United States brought a civil action against appellants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Alleging that the tobacco companies had engaged in a decades-long conspiracy to "deceive the American public about the health effects of smoking," the government sought disgorgement of profits and injunctive relief under 18 U.S.C. § 1964. First Am. Compl. at ¶ 3, *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006) (No. 99-cv-2496, ECF No. 274). In 2006, after this Court ruled that disgorgement was not

an available remedy under the statute, *see United States v. Philip Morris USA, Inc.*, 396 F.3d 1190 (D.C. Cir. 2005), the district court issued Order #1015, which granted injunctive relief against the tobacco companies in order to prevent future RICO violations. *See United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006) (Order #1015). On appeal, we largely affirmed the district court's decision, vacating and remanding only with regard to a handful of peripheral issues not relevant to this appeal. *See United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1150 (D.C. Cir. 2009). Some of those issues are still before the district court on remand.

The injunction included provisions requiring appellants to make disclosure to the government of various marketing data:

16. Each Defendant shall be required to disclose all disaggregated marketing data to the Government in the same form and on the same schedule which Defendants now follow in disclosing disaggregated marketing data to the Federal Trade Commission. Defendants must disclose such data to the Government for a period of ten years from the date of this Final Judgment and Remedial Order.

17. Disaggregated Marketing Data shall be maintained in the databases and formats maintained by Defendants, and all reports generated from such Disaggregated Marketing Data shall be made available to the Government.

18. In addition, each year's Disaggregated Marketing Data shall be separately maintained in a format suitable for downloading (e.g., comma separated value (CSV) file, compressed in a ZIP or similar format). All data fields shall be specified.

19. All Disaggregated Marketing Data shall be deemed "confidential" and "highly sensitive trade secret information," as defined in Orders # 7 and # 36, and shall be subject to the provisions of those Orders.

*Philip Morris*, 449 F. Supp. 2d at 944–45 (Order #1015). Neither appellants nor the government sought reconsideration or appellate review of the data-disclosure requirement during the original litigation; therefore, these paragraphs were not considered by this Court in the prior appeal of Order #1015.

After remand, the parties disagreed as to the meaning of "disaggregated marketing data." Appellants asserted that they were only required to disclose the same disaggregated marketing data that they already disclose to the Federal Trade Commission ("FTC"). The data appellants currently provide to the FTC include the total number of cigarettes sold and given away in the United States, and the yearly amount spent on advertising in categories such as newspapers, magazines, and point-of-sale advertisements. However, the district court had defined the term "Disaggregated Marketing Data" in a glossary appended to its remedial order. That definition reads:

Data that has been broken down by type of marketing (including sales data), brand, geographical region (to the smallest level of geographic specificity maintained by each Defendant), type of promotion or marketing used, number of cigarettes sold, advertising in stores and any other category of data collected and/or maintained by or on behalf of each Defendant. This breakdown of marketing data is required by the FTC but kept confidential. The FTC only publishes only the aggregated data.

*Philip Morris*, 449 F. Supp. 2d at 946–47. Appellants also argued that they were only required to submit the data to the Department of Justice ("DOJ"), and that the DOJ could not share it any further under the confidentiality requirements in Paragraph 19. The government contended that it should be allowed to share data obtained from appellants under the final order with "other appropriate Executive Branch agencies," subject to the confidentiality orders listed in Paragraph 19.

Given the inability of the parties to agree on the parameters of the disclosure requirement, the government filed a motion for clarification with the district court. The district court agreed with the government's understanding of the disclosure requirement, reasoning that the term "Disaggregated Marketing Data" must be read in conjunction with the definition in the glossary and a similar definition found in the text of the prior opinion. *United States v. Philip Morris USA Inc.*, 778 F. Supp. 2d 8, 11 (D.D.C. 2011). In addition, the court concluded that the narrow reading of the confidentiality provision requested by appellants would undermine the explicit transparency objective of Order #1015 and "preclude the Government from sharing such information with experts whose opinion they were seeking, as well as with other Government entities with an obvious interest in the data," such as law enforcement and experts in the fields of marketing and statistics. *Id.*

After considering the motion, the response of the tobacco companies, and the entire record, the district court entered Order #20-Remand, which granted the government's motion. More specifically, the order explicitly provided that the term "Disaggregated Marketing Data" was as defined in the glossary attached to the court's original opinion. This had the effect of requiring the companies to furnish the full range of disaggregated marketing data sought by the government under its understanding of the injunction. Finally, the new order

6

explicitly provided that the government could disclose the data to other governmental entities, subject to the confidentiality provisions of the final order. The tobacco companies filed the present appeal, seeking reversal of the district court's Order #20-Remand and arguing that it was an unlawful modification of the existing injunction beyond the jurisdiction of the district court at this stage of the proceedings.

## II.

### A.

Appellants contend that the order under review constitutes a modification of the injunction beyond the jurisdiction of the district court. Appellants contend that the new order "completely rewrites" the data-disclosure requirements of the original injunction. They rely specifically on the language of Paragraph 16, which required the companies to "disclose all disaggregated marketing data to the Government in the same form and on the same schedule which Defendants now follow in disclosing disaggregated marketing data to the Federal Trade Commission." *Philip Morris*, 449 F. Supp. 2d at 944 (Order #1015). Under Order #20-Remand, appellants must disclose

> all marketing data broken down by type of marketing or promotion use[d] (including sales data), geographical region (to the smallest level of geographic specificity maintained by each Defendant), number of cigarettes sold, advertising in stores, and any other category of data collected and/or maintained by or on behalf of each Defendant.

*Philip Morris*, 778 F. Supp. 2d at 12 (Order #20-Remand). Under the new requirements, appellants argue, a significantly larger amount of data must be disclosed. They contend that the

original language is clear: it requires the tobacco companies to disclose disaggregated marketing data "in the same form" and "on the same schedule" as the data provided to the FTC. Data provided "in the same form," they contend, must be the same data.

In support of their interpretation of the original language, appellants point to the district court's explanation in the original opinion, which stated that the requirement was for appellants to "provide their disaggregated marketing data to the Government according to the same schedule on which they provide *it* to the FTC." *Philip Morris*, 449 F. Supp. 2d at 932 (emphasis added). They reason that the word "it" in that sentence can only refer to the data provided to the FTC, showing that the data provided to the DOJ is to be the same. Appellants suggest that the revision to the confidentiality provision effects a change as well: the opinion stated that the data "will be disclosed only to the Department of Justice," *id.* at 932 (Order #1015), but now the court states that there are no "Court-imposed restrictions on the dissemination of [the] data," other than the confidentiality provisions provided for in earlier orders. *Philip Morris*, 778 F. Supp. 2d at 13 (Order #20-Remand). Appellants note that the government sought a broad disclosure requirement during the original litigation, but the district court instead adopted the language used in the injunction. The government cannot now attain the broader disclosure, appellants argue.

Appellants' argument in support of this position begins with the proposition that this court in our prior comprehensive review of the original injunction in this case upheld the injunction, save some minor terms not at issue in the current controversy. Therefore, they contend, the district court was without authority to modify any other terms of the injunction. As they view it, any possible authority to make such modification must emanate from either Rule 59 or 60 of the Federal Rules of Civil

Procedure. They assert that the court could not have been acting under Rule 59(e), titled "Motion to Alter or Amend a Judgment," because that subsection requires filing no later than 28 days after the entry of the judgment—a period well over in this case. As to Rule 60, Relief From a Final Judgment or Order, that rule sets forth a litany of grounds establishing a high bar for modification. The companies contend that none of those enumerated grounds exist in this case. The government's response is simple: This is not a modification; it is a clarification of the existing duties under the original injunction.

## B.

Before we address the merits of the companies' appeal, we must first determine whether we have jurisdiction over the case. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). As a general norm, courts of appeal have jurisdiction to review "final decisions of the district courts of the United States." 28 U.S.C. § 1291. While making an alternate argument that Order #20-Remand constitutes such a final decision, appellants' primary jurisdictional proposition is that this order comes within the exception created by 28 U.S.C. § 1292(a). That section provides for jurisdiction over "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." The exception to the normal finality requirement created by that section "is a limited one, and the Supreme Court has 'construed [it] narrowly.'" *Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258, 1261 (D.C. Cir. 2012) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (brackets in *Salazar*)). As we observed in *Salazar*, the scope of the exception "is now relatively clear." *Id.* Briefly put, if the interlocutory order at issue clearly grants or denies a specific request for injunctive relief, it is appealable without further showing. *See id.* at 1264 (collecting cases). If the order does

not grant or deny a request to dissolve an injunction, it may still be appealable "if it has the 'practical effect' of doing so." *Id.* at 1262 (quoting *Carson*, 450 U.S. at 83). Generally, a "practical effects" order is within the jurisdiction of the court for interlocutory review only if the appellant can show (1) that the order "might have a 'serious, perhaps irreparable, consequence,'" and (2) "that the order can be 'effectually challenged' only by immediate appeal." *Id.* (quoting *Carson*, 450 U.S. at 84). The difficulty in applying these relatively straightforward requirements occurs in a case such as this where the district court has entered an order having some possible practical effect on the existing injunction, but where the district court's action causing such an effect may not be a modification of the existing order, but rather is, at least arguably, only a clarification in different language of the obligations theretofore imposed.

While we do not have precedent directly parallel to the case before us, other circuits have approached the question with the same caution employed in the *Carson* analysis. With specific relevance to the modification-or-clarification question, some have noted the danger that plunging into the details of the disputed district court action "would collapse the jurisdictional inquiry into a decision on the merits." *Birmingham Fire Fighters Ass'n 117 v. Jefferson Cty.*, 280 F.3d 1289, 1293 (11th Cir. 2002); *see also Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1154–55 (10th Cir. 2007). As those circuits have reasoned, to do otherwise would "thwart[] the purpose of § 1292(a)(1)," which is "deliberately careful in limiting the availability of interlocutory review of orders concerning injunctions." *Birmingham Fire Fighters Ass'n*, 280 F.3d at 1293. We agree.

Although we further recognize, as have other circuits, that "we are not governed by the district court's own characterization

of the order as an 'interpretation' or 'clarification,' as distinguished from a 'modification,'" we also agree with their narrow and careful approach to the making of a distinction as mandated by the language and purpose of § 1292(a)(1). *Id.* at 1292 (citing *Gautreaux v. Chicago Hous. Auth.*, 178 F.3d 951, 956–57 (7th Cir. 1999)). Like the other circuits, we recognize that the scope of the injunction is to be "determined by the independent judgment of this Court," *Int'l Ass'n of Machinists & Aero. Workers v. E. Air Lines, Inc.*, 849 F.2d 1481, 1485 (D.C. Cir. 1988). Nonetheless, we must approach the question with the purpose of fulfilling the statutory goal of not "letting piecemeal appeals, cloaked in the guise of jurisdictional inquiries, come in through the back door," *Birmingham Fire Fighters Ass'n*, 280 F.3d at 1293. The functional approach followed by, *inter alia*, the Eleventh Circuit, is to look "not to the form of the district court's order but to its actual effect." *Id.* (quoting *Sierra Club v. Marsh*, 907 F.2d 210, 213 (1st Cir. 1990)). Again consistent with the other circuits, we conclude that "an order modifies the original decree when it actually changes the legal relationship of the parties to the decree." *Id.* The order before us has not done so. As with the orders before the *Birmingham Fire Fighters* and *Gautreaux* courts, this order makes no actual change in the legal relation of the parties to the decree, and for jurisdictional purposes, we conclude that it is a clarification, not a modification.

We recognize, as did the *Birmingham Fire Fighters* court, that a district court's interpretation of an injunction could conceivably be so "blatantly or obviously wrong" that it amounts to a modification. *Id.* But we further agree with the *Birmingham Fire Fighters* and *Gautreaux* courts that if the order does not either by its terms or by the court's blatant or obvious misinterpretation of the injunction effect such a change in relationship, then it is not a modification, and we do not have jurisdiction over the attempted interlocutory appeal.

This approach, beyond its consistency with other circuits, is also one dictated by logic. Because a district court in many cases—as in this one—must retain jurisdiction over an injunction for the purpose of ensuring compliance for some extended period of time, the chances are not only real but overwhelming that the parties will differ at times on their interpretation of the original injunction. It would seem inescapable that in an injunction of the scope and length of the one before the district court in this case, the parties will at least be able to tease out some ambiguity. As we have observed with ironic applicability to the case before us, "some will find ambiguity even in a 'No Smoking' sign." *Int'l Union v. Gen. Dynamics*, 815 F.2d 1570, 1575 (D.C. Cir. 1985). Given the length and breadth of the injunction in the present case, were we to hold that Order #20-Remand worked a modification activating interlocutory appealability, we might well expect a regular pummeling of our docket with other supposed modifications.

The district court's interpretation of the data-disclosure requirement does not change the terms or force of Order #1015, and it is certainly not "obviously wrong." Appellants cannot credibly dispute the proposition that the disputed language in Order #1015 used a term, "Disaggregated Marketing Data," that the district court explicitly defined in the glossary using the same language it added to the injunction itself in Order #20-Remand. *See Philip Morris*, 449 F. Supp. 2d at 944. Adding to the order the full definition of a term already defined in the glossary does not "substantially change[] the terms and force of the injunction," *Pimentel*, 477 F.3d at 1154, and the district court's refusal to render superfluous that glossary definition is far from a blatant misinterpretation.

Appellants' confidentiality argument fares no better: the original text of Order #1015 did not limit the data to only being

viewed by the DOJ. Appellants cite language in the opinion stating that the data "will be disclosed only to the Department of Justice," but that language, in context, deals with whether the data would be made public or not—and that same portion of the opinion states, as does Order #20-Remand, that the data is subject to the appropriate protective orders. *See Philip Morris*, 449 F. Supp. 2d. at 932. Limiting appellants' disclosure obligation to the DOJ is not the same as limiting what DOJ can then do with the disclosed data once it is disclosed to it.

We could continue to play semantics with appellants regarding the meaning of the word "it." We might possibly even play the same game with the questionable proposition that requiring disclosure of data in the same "form" as the FTC data is the same as requiring disclosure of the same "scope." But no matter how the language is parsed, it could not compel the conclusion that the district court blatantly misinterpreted the injunction.

As an alternative jurisdictional basis, appellants suggest that Order #20-Remand constitutes a final order under 28 U.S.C. § 1291, which provides for jurisdiction of the courts of appeal over "final decisions of the district courts of the United States." This statute is plainly inapplicable. It is well established that "a decree is final, for the purposes of an appeal . . . , when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." *St. Louis, IM&S Ry. Co. v. Southern Express Co.*, 108 U.S. 24, 28–29 (1883). Order #20-Remand does no such thing. It only elaborates on the meaning of preexisting injunctive provisions; it does not purport to take any action against a party or enforce any new legal consequences. The basic nature of an order purporting to clarify an existing injunction is inconsistent with that description of a final decree. The order purporting to modify does not terminate

litigation or fix the obligations of the parties, or for that matter, impose sanctions for some violation. It simply makes clear in different language what has been previously been said. It is only if the purported clarification becomes such a modification as to create new rights or obligations that we have jurisdiction. *See, e.g.*, *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010); *Major v. Orthopedic Equip. Co.*, 561 F.2d 1112, 1115 (4th Cir. 1977). This is not because such a modification would necessarily create finality in itself, but because it falls within a statutory exception rendering it unnecessary to make that determination. Perhaps it might be possible for an order that actually worked some modification to be final in the sense required for jurisdiction under § 1291, but this order works no such modification, and we have no jurisdiction.

\*     \*     \*

Our jurisdiction over this interlocutory appeal is properly examined under 28 U.S.C. § 1292(a)(1). Because Order #20-Remand does not "grant[], continu[e], modify[], refus[e] or dissolve[] injunctions, or refus[e] to dissolve or modify injunctions," 28 U.S.C. § 1292(a)(1), we dismiss the appeal for want of jurisdiction.

*So ordered.*