# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 23, 2014       Decided January 13, 2015

No. 13-7072

WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION,
APPELLEE

v.

RELIABLE LIMOUSINE SERVICE, LLC AND
PAUL BENJAMIN RODBERG,
APPELLANTS

Consolidated with 13-7161

Appeals from the United States District Court
for the District of Columbia
(No. 1:12-cv-00576)

*Elyse L. Strickland* argued the cause for the appellants. *Maurice B. VerStandig* was with her on brief.

*Jeffrey M. Lehmann* argued the cause for the appellee. *William S. Morrow Jr.*, was with him on brief.

Before: HENDERSON and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*:

> The Wise do at once what the Fool does at last.
> — Baltasar Gracián
> *The Art of Worldly Wisdom*, cclxviii

Paul Rodberg operated a limousine business in the District of Columbia metropolitan area (District) for many years without authorization from the Washington Metropolitan Area Transit Commission (WMATC). WMATC eventually sued Rodberg and his company in district court, seeking an injunction to shut down his illegal limousine operation. After Rodberg failed to participate in discovery, the district court entered default judgment against him. Not to be outfoxed, Rodberg ignored the default judgment and continued operating his limousine business under a different name. The district court issued yet another order, making perfectly clear that *all* of Rodberg's companies were enjoined from transporting passengers in the District without a license. Rodberg now appeals the default judgment and the subsequent order. We affirm the district court's default judgment and lack jurisdiction to consider the subsequent order.

## I. BACKGROUND

Rodberg is in the limousine business. He has owned several iterations of a company providing limousine service in the District. From 1996 to 2009, Rodberg operated Reliable Limousine, Inc. (RLI). RLI repeatedly failed to pay its federal taxes. The Internal Revenue Service eventually caught up with Rodberg but, instead of paying the taxes owed, Rodberg shifted his limousine business to a new company: Reliable Limousine Service, LLC (RLS). RLS operated from 2009 to 2011 but it too failed to pay taxes. The IRS again pursued and Rodberg again shifted his business to a new

company: Reliable Limousine and Bus Service, LLC (RLBS). The United States sued Rodberg, RLI, RLS and RLBS in the District of Maryland, seeking injunctive relief to force their compliance with the tax laws. At one point in the litigation, the district court held Rodberg in contempt for "willfully and deliberately" refusing to participate in discovery. *See* Order of Contempt at 1, *United States v. Reliable Limo. Serv., LLC*, No. 8:11-cv-03383 (D. Md. Oct. 22, 2012). Rodberg and the United States ultimately settled.

Rodberg's legal woes did not end there. His limousine companies not only failed to pay their taxes but also transported passengers within the District without a license. In April 2012, WMATC sued Rodberg and RLS in the district court here, seeking an injunction to shut down Rodberg's limousine operation. (Notably, RLBS was not a party to the lawsuit.) The district court originally set the discovery deadline for November 2012. In October 2012, WMATC served Rodberg with interrogatories and document requests. Rodberg never responded. In December, the district court ordered Rodberg to participate in discovery, extended the discovery deadline to January 2013 and set the case for trial in March 2013. Rodberg remained non-compliant. He claimed he was not participating in discovery because he was at that point applying for a WMATC license.[1] In February 2013, the district court rejected Rodberg's excuse and sanctioned him by awarding WMATC a default judgment. *See WMATC v. Reliable Limo. Serv., LLC*, No. 1:12-cv-00576, 2013 WL

---

[1] WMATC ultimately rejected Rodberg's application and the Fourth Circuit affirmed its decision. *See In re Reliable Limo. & Bus Serv., LLC*, Nos. AP-2012-183, AP-2012-184, Order No. 13,775 (WMATC Feb. 28, 2013), *aff'd sub nom. Reliable Limo. & Bus Serv., LLC v. WMATC*, 553 F. App'x 343 (4th Cir. 2014). The Fourth Circuit, like this Court, has jurisdiction to review WMATC orders. *See* Pub. L. No. 101–505, tit. II, art. XIII, § 5(a), 104 Stat. 1300, 1311–12.

461355, at *1 (D.D.C. Feb. 6, 2013). The default judgment included a permanent injunction that prohibited Rodberg and RLS from transporting passengers for hire in the District.[2]

But WMATC's victory was short-lived. It soon discovered what the IRS knew all too well: pursuing Rodberg was like playing whack-a-mole. Rodberg continued to provide limousine service in the District via *RLBS*, not *RLS*. This prompted WMATC to return to district court to seek a contempt citation. Instead, the district court decided to "clarify" its February injunction. *WMATC v. Reliable Limo. Serv., LLC*, 985 F. Supp. 2d 23, 31–32 (D.D.C. 2013). In October 2013, it issued an order expressly placing RLBS under the February 2013 injunction's prohibition on transporting passengers for hire.[3]

---

[2] The February 2013 injunction provides, in relevant part:

> **ORDERED, ADJUDGED, AND DECREED** that defendants Rodberg and Reliable Limousine Service, LLC, are permanently enjoined from transporting passengers for hire between points within the Metropolitan District unless and until properly authorized by the Washington Metropolitan Area Transit Commission ("WMATC") . . . .

Order and Default Judgment at 1, *WMATC v. Reliable Limo. Serv.*, *LLC*, No. 1:12-cv-00576 (D.D.C. Feb. 6, 2013).

[3] The October 2013 order states, in full:

> For the reasons stated in the accompanying Memorandum Opinion, the Court clarifies the scope of its February 6, 2013 Order. It is hereby:
>
> **ORDERED AND DECREED** that because Reliable Limousine and Bus Service, LLC ("RLBS") is "in privity" with defendant Paul Rodberg, RLBS is also permanently enjoined from transporting passengers for hire between points within the Metropolitan District unless and until properly authorized by the Washington Metropolitan Area Transit Commission ("WMATC"). RLBS must comply with this Order by Friday, November 8, 2013; it is further

Rodberg[4] appealed both the February injunction and the October order. We *ex mero motu* consolidated Rodberg's two appeals.

## II. ANALYSIS

Although Rodberg's appeals are consolidated, we analyze them separately. *See* FED. R. APP. P. 3(b) advisory committee's note (1998) ("consolidated appeals . . . do not merge into one"); D.C. CIRCUIT HANDBOOK OF PRACTICE AND INTERNAL PROCEDURES 24 (2013) ("Each [consolidated] case retains some of its individual identity . . . ."). In Case No. 13-7072, Rodberg challenges the February 2013 injunction, which the district court issued via the default judgment. In Case No. 13-7161, Rodberg challenges the district court's October 2013 order, which expressly made RLBS subject to the February 2013 injunction.

---

**ORDERED** that pursuant to Fed. R. Civ. P. 65(d), Rodberg's agents, servants, employees, and attorneys, as well as any other persons or entities who are in active concert or participation with Rodberg or anyone described above, are permanently enjoined from transporting passengers for hire between points within the Metropolitan District unless and until properly authorized by the WMATC; and it is further

**ORDERED** that, subject to the limitations of Rule 65(d), any entity created or controlled, directly or indirectly, by Rodberg, now or in the future, is permanently enjoined from transporting passengers for hire between points within the Metropolitan District unless and until properly authorized by the WMATC.

Order at 1–2, *WMATC v. Reliable Limo. Serv.*, *LLC*, No. 1:12-cv-00576 (D.D.C. Oct. 18, 2013).

[4] For convenience, we refer to appellants Rodberg and RLS collectively as "Rodberg."

## A. Case No. 13-7072
## (Default Judgment/Injunction)

Rodberg contests the district court's entry of default judgment as a sanction for his discovery lapse. Although he does not dispute that his conduct was sanctionable, Rodberg argues that the punishment does not fit the crime.

We review the district court's imposition of discovery sanctions, including a default judgment award, for abuse of discretion. *See NHL v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976); *Webb v. Dist. of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998). The abuse-of-discretion standard, however, is "a verbal coat of many colors." Henry J. Friendly, *Indiscretion About Discretion*, 31 EMORY L.J. 747, 763 (1982) (internal alteration omitted). "[D]efining the proper scope of review . . . requires considering in each situation the benefits of closer appellate scrutiny as compared to those of greater deference." *Id.* at 756. With a default judgment, our review is more "thorough" because the "drastic" sanction "deprives a party completely of its day in court." *Webb*, 146 F.3d at 971. Moreover, there are limitations on the district court's ability to enter default judgment as a discovery sanction. A default judgment is inappropriate unless the litigant's misconduct is accompanied by "willfulness, bad faith, or fault." *Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1458 (D.C. Cir. 1986) (internal alterations omitted). The district court also has a "duty to explain" its decision to award default judgment instead of a lesser sanction. *Webb*, 146 F.3d at 971. We then conduct an independent review to determine whether the district court abused its discretion. *See id.* at 972. Because the parties do not dispute Rodberg's willfulness, we turn to the district court's choice of sanction.

To determine whether the district court abused its discretion by entering default judgment as a discovery sanction, we evaluate the following factors: (1) prejudice to the opposing party, (2) prejudice to the judicial system and (3) the need for punishment and deterrence. *See Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074–79 (D.C. Cir. 1986). These factors are non-exhaustive and we must consider "all the relevant circumstances" surrounding the entry of default judgment. *Bristol Petrol. Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990) (R.B. Ginsburg, J.). Still, we pay "great deference" to the district court's decision because it has "a better 'feel' . . . for the litigation and the remedial actions most appropriate under the circumstances presented." *Founding Church of Scientology*, 802 F.2d at 1457; *see also Bristol Petrol. Corp.*, 901 F.2d at 167 (appellate court should be "hesitant to type the exercise of a district court's dismissal authority as an abuse of discretion" because district court has "front-line responsibility for operating the judicial system" (citations omitted)). After a careful review of the *Shea* factors, we are convinced that the district court did not abuse its discretion by entering default judgment against Rodberg.

***Prejudice to the Opposing Party***: Rodberg's recalcitrance prejudiced WMATC in a direct and obvious manner. Each day of delay was another day that Rodberg illegally operated his limousine business. Granted, delay that merely prolongs litigation "is not a sufficient basis for establishing prejudice." *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). But, here, there was more: in transporting passengers in the District without a license, Rodberg jeopardized the public safety. *See generally* Pub. L. No. 101–505, tit. II, art. XI, 104 Stat. 1300, 1304–09 (outlining requirements WMATC licensees must follow); *see also New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005)

(finding prejudice from delay that "endanger[ed] the public health and safety"). The first *Shea* factor weighs in favor of the district court's decision.

*Prejudice to the Judicial System*: Rodberg also interfered with the district court's ability to manage its docket. In February 2013—one month before trial—Rodberg had not responded to any of WMATC's requested discovery. The district court was thus faced with a choice: enter default judgment or postpone the trial. We have described such a choice as "intolerable." *Shea*, 795 F.2d at 1075; *see also Bristol Petrol. Corp.*, 901 F.2d at 168 n.5 ("[I]n several cases affirming pre-trial dismissals, courts have featured the fact that the party's delay occurred close to the time of trial and threatened to upset the court's carefully planned calendar."). Litigants do not exist in a vacuum; misconduct like Rodberg's can reverberate throughout the judicial system. *See Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 691 (D.C. Cir. 1987) ("Litigants who are willful in halting the discovery process . . . in this era of crowded dockets . . . deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism."). This is not a case in which the district court could have addressed Rodberg's misconduct by simply granting a continuance. *Cf. Webb*, 146 F.3d at 974–75. The district court had already moved the discovery deadline twice—first, from November to December and, then, from December to January. The district court had no reason to expect that, if it granted yet another continuance, Rodberg would meet his discovery responsibilities. *See Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168, 1170 (D.C. Cir. 1981) ("[I]t was not an abuse of discretion to rule that two weeks short of trial was too late [to take certain action] . . . when the court had directed the litigant to take that action half a year earlier."); *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) ("[T]hree strikes are more than enough to

allow the district court to call a litigant out."). Accordingly, the second *Shea* factor also weighs in favor of the district court's decision.

*Deterrence and Punishment*: Discovery sanctions serve two purposes: punishing disobedient parties and deterring others from emulating their behavior. *See NHL*, 427 U.S. at 643; *Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 445 (D.C. Cir. 1994). On the spectrum of discovery misconduct, Rodberg's behavior was egregious. *See NHL*, 427 U.S. at 643 (approving default judgment where litigant exhibited "flagrant bad faith" and "callous disregard" of discovery obligations); *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) ("default judgments were designed to handle[] a totally unresponsive party"). His refusal to participate in discovery was not only willful but appeared to be a calculated move to delay for the sake of delay. *See Butera v. Dist. of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001) ("[Discovery sanctions] ensure that a party will not be able to profit from its own failure to comply with the rules."); *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he possibility of a default is a deterrent to those parties who choose delay as part of their litigative strategy."). This factor weighs most strongly in favor of the district court's decision.

Notably, Rodberg has yet to offer a plausible excuse for his failure to participate in discovery. He claimed in district court that he was not participating because he first wanted to hear from WMATC about his license application. The district court correctly rejected this excuse. Litigants cannot pick and choose the legal proceedings they want to participate in at any given time. *See Harrington v. City of Chicago*, 433 F.3d 542, 547 (7th Cir. 2006) ("the pendency of [other] cases . . . did not justify the [litigant's] failure to respond to . . . written

discovery requests throughout the discovery period"). Rodberg's non-excuse suggests that his motivation was far from bona fide and thus deserving of harsh sanctions. *See Bristol Petrol. Corp.*, 901 F.2d at 168 (affirming default judgment because litigant exhibited "lack of any effort to comply with the court's order" and offered "no colorable explanation"); *Automated Datatron*, 659 F.2d at 1170 (affirming default judgment because litigant exhibited "prolonged" and "conspicuous disregard of the trial court's order" and provided "[n]o special circumstances" to explain misconduct); *Hughes v. Holland*, 320 F.2d 781, 782 (D.C. Cir. 1963) (affirming default judgment because litigant made "no showing of diligence" and "offered no adequate legal excuse for her neglect").

In addition, Rodberg is a discovery repeat offender. In 2012, the District of Maryland held Rodberg in contempt for deliberately ignoring the IRS's discovery requests. Rodberg's history of discovery misconduct indicates that his lawlessness needs the harshest sanction to make him comply. *See Johnson v. CIR*, 289 F.3d 452, 457 (7th Cir. 2002) ("[D]ogged good-faith persistence in bad conduct becomes sanctionable once [the guilty party] learns or should have learned that it is sanctionable."); *Moody v. Miller*, 864 F.2d 1178, 1181 (5th Cir. 1989) ("[M]indful of [the litigant's] past history with the federal courts, the imposition of [dismissal as a] sanction[] was a valid exercise of the court's discretion."). Moreover, Rodberg ignored his discovery obligations in the IRS litigation while he was represented by different counsel, manifesting that Rodberg *himself* is the person responsible for his discovery delicts. This is not a case in which "an unwitting litigant [is] made to suffer for the sins of her attorney." *Bristol Petrol. Corp.*, 901 F.2d at 167; *cf. also Shea*, 795 F.2d at 1078 ("We look disfavorably upon dismissals as sanctions for attorney misconduct or delay

*unless the client himself has been made aware of the problem, usually through notice from the trial court*." (emphasis in original)). Rodberg's history of self-directed discovery misconduct plainly supports the district court's sanction of default judgment in this case.

Rodberg offers two responses, both unpersuasive. He claims that the district court violated two hard-and-fast rules in entering default judgment against him. Neither "rule," however, exists under our case law.

First, Rodberg argues that the district court had a duty to impose a lesser sanction before opting for default judgment. We have repeatedly rejected this proposition. *See, e.g.*, *Webb*, 146 F.3d at 971 ("we do not require a district court . . . to exhaust lesser sanctions before turning to default"); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1479 (D.C. Cir. 1995) ("[A] district court need not exhaust other options before . . . imposing a default judgment."); *Founding Church of Scientology*, 802 F.2d at 1459 n.15 ("Prior resort to lesser remedies is not . . . required regardless of the circumstances presented."). Although the district court must *explain* why a lesser sanction is inadequate, it has no duty to impose it first, entering default judgment only after the lesser sanction fails.

Second, Rodberg contends that the district court erroneously entered default judgment based on a *single* violation of the discovery rules. Rodberg is mistaken, both legally and factually. We have never held that a district court cannot enter default judgment based on a single discovery violation. Granted, we have said that "under certain circumstances, dismissal may be an unduly severe sanction for a single episode of misconduct." *Bristol Petrol. Corp.*,

901 F.2d at 167.[5]   But we have also affirmed a dismissal based on "a single incident of misconduct" if a "disruption of the judicial system" or "clear client responsibility for the misconduct" occurred. *Ripalda v. Am. Operations Corp.*, 977 F.2d 1464, 1467 (D.C. Cir. 1992) (citing, as examples, *Automated Datatron*, 659 F.2d 1168 and *Bristol Petrol. Corp.*, 901 F.2d 165).   As noted, both factors—disruption of the judicial system and clear client responsibility—are present here. *See supra* pp. 8, 10–11.

In any event, Rodberg wrongly argues that he has committed only one discovery violation.   Rodberg violated the discovery rules in January 2013 when he ignored the district court's order compelling discovery. *See* FED. R. CIV. P. 37(b)(2).   Two months earlier, however, Rodberg also violated the discovery rules by failing to respond to WMATC's interrogatories. *See* FED. R. CIV. P. 37(d)(1)(A)(ii).   A litigant can be sanctioned for failing to respond to interrogatories even without a court order. *See Dellums v. Powell*, 566 F.2d 231, 235 (D.C. Cir. 1977). Indeed, we have emphasized the heightened need for a sanction that bites in this context:

> If parties are allowed to flout their [discovery] obligations, choosing to wait to make a response [to interrogatories] until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result

---

[5] We once said that "a single act of misconduct seldom *if ever* can justify dismissal." *Camps v. C & P Tel. Co.*, 692 F.2d 120, 123 (D.C. Cir. 1981) (emphasis added).   But that statement—to the extent that it may articulate a rule—is dictum. *See Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 190 (D.C. Cir. 1985) (Scalia, J., dissenting) ("The expansive dictum in *Camps* . . . is plainly an exaggeration insofar as the 'if ever' is concerned.").

> directly contrary to the overall scheme of the federal discovery rules.

*Id.* at 235–36. Additionally, as noted, Rodberg previously committed discovery violations in the IRS litigation. The district court properly took his earlier misconduct into account, even though it occurred in a different case and in a different federal court. *See Thibeault v. Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992) ("The totality of the circumstances [when reviewing discovery sanctions] can include events which did not occur in the case proper but occurred in other cases and are, by their nature, relevant to the pending controversy."); *see also* FED. R. CIV. P. 11 advisory committee's note (1993) (in considering sanctions, court can weigh "whether the person has engaged in similar conduct in other litigation").

For these reasons, we conclude that the district court did not abuse its discretion when it entered default judgment against Rodberg as a sanction for his total discovery lapse. We therefore affirm the district court's February 2013 order awarding permanent injunctive relief.

## B.  Case No. 13-7161
## (Clarification Order)

Rodberg next challenges the district court's October 2013 order, which detailed the scope of its February 2013 injunction. Originally, the parties did not contest our jurisdiction but we must nonetheless assure ourselves that we have it. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). And, after asking them to address our jurisdiction at oral argument, WMATC now challenges it. We are convinced that we lack jurisdiction in Case No. 13-7161 and therefore do not reach the merits of Rodberg's challenges to the October 2013 order. *See Steel Co. v. Citizens for a Better*

*Env't*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868))).

We have jurisdiction to hear appeals from "final decisions" of the district court. 28 U.S.C. § 1291. A "final" order under section 1291 "terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." *United States v. Philip Morris USA Inc.*, 686 F.3d 839, 846 (D.C. Cir. 2012) (quoting *St. Louis, IM & S. Ry. Co. v. S. Express Co.*, 108 U.S. 24, 28–29 (1883)). Applying this description, we conclude that the October 2013 order is not a final, independently appealable order. The district court did not hold Rodberg in contempt, as WMATC requested, and plainly did not "terminate[] the litigation . . . on the merits." *See id.*; *accord Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co.*, 768 F.3d 1320, 1325 (11th Cir. 2014).

To allow us to consider Rodberg's challenges to the October 2013 order, he must identify an exception to section 1291's finality requirement.[6] Only one exception is relevant here. Section 1292(a)(1) gives us jurisdiction over appeals of "[i]nterlocutory orders . . . modifying . . . injunctions." 28 U.S.C. § 1292(a)(1). We construe this exception "narrowly," lest we "turn the barrier against piecemeal appeals into Swiss

---

[6] *See, e.g.*, 28 U.S.C. § 1292(b) (certification by district court); *id.* § 1651 (writ of mandamus); FED. R. CIV. P. 54(b) (partial final judgment in multi–claim/party proceeding); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (collateral order doctrine); *Cobell v. Norton*, 334 F.3d 1128, 1140 (D.C. Cir. 2003) (criminal contempt).

cheese." *Salazar ex rel. Salazar v. Dist. of Columbia*, 671 F.3d 1258, 1261 (D.C. Cir. 2012). An order that merely *clarifies* an injunction does not "modify[]" it under section 1292(a)(1). *See Philip Morris*, 686 F.3d at 844–45. To distinguish between a clarification and a modification, we look at the "actual effect" of the order, not its "form." *Id.* at 844; *see also United States v. W. Elec. Co.*, 777 F.2d 23, 29 (D.C. Cir. 1985) (because "clarification and modification may be virtually indistinguishable . . . appealability depends not on terminology but on the substantive effect of the order" (citations and internal quotation marks omitted)). An order "modifies" an injunction only if it "actually changes the legal relationship of the parties." *Philip Morris*, 686 F.3d at 844.

Here, the February 2013 injunction originally prohibited Rodberg and RLS from transporting passengers for hire in the District without a license. The October 2013 order expressly included RLBS in that prohibition. Thus, the clarification-versus-modification question turns on whether RLBS was *already* bound by the February injunction.[7] If so, the October order is a clarification because it did not "actually change[] the legal relationship of the parties." *Philip Morris*, 686 F.3d at 844.

Under Federal Rule of Civil Procedure 65(d)(2), an injunction automatically applies to "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with . . . (A) or (B)." FED. R. CIV. P. 65(d)(2). An injunction covers these persons/entities even if they are not expressly mentioned in the text of the order. *See* 11A

---

[7] We need not tarry over the rest of the October 2013 order. The other provisions merely incorporate the language of Rule 65(d)(2). *See supra* note 3.

WRIGHT & MILLER § 2956 (3d ed. 2014). Rule 65(d)(2) incorporates the common-law principle that an injunction "not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973); *see also* 11A WRIGHT & MILLER § 2956 (Rule 65(d) does not expand or contract the pre-1938 practice in the courts of equity). The Rule ensures that a defendant cannot "nullify" an injunction "by carrying out prohibited acts through aiders and abettors" who "were not parties to the original proceeding." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945).

Rodberg contends that he is merely RLBS's employee or agent. *Cf. Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 304 & n.5 (2d Cir. 1999) ("[T]he mere fact of an employer/employee . . . or principal/agent relationship, without more, does not necessarily satisfy [Rule 65(d)(2)], at least where the consequence would be to extend the injunction to cover *the dominant party*." (emphasis added)). He invokes the Wizard-of-Oz defense, hoping we "pay no attention to that man behind the curtain." THE WIZARD OF OZ (Metro-Goldwyn-Mayer 1939). But Rule 65 requires us, like Toto, to pull back the curtain to expose the reality. Once we do, it is plain that Rodberg and RLBS are so related that an injunction binding the former also binds the latter.[8] On this record, Rodberg completely controls RLBS: He is the President and sole shareholder. RLBS operates for Rodberg's benefit and he can cease its operation at any time. *See*

---

[8] For the same reason, Rodberg cannot plausibly claim that RLBS lacked "actual notice" of the injunction. FED. R. CIV. P. 65(d)(2); *see Ex parte Lennon*, 166 U.S. 548, 554 (1897) ("To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice.").

*Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963) (finding privity between two entities where one was "substantially dominated, directed and controlled" by other and "operate[d] primarily to achieve [its] objectives"); *Drier v. Tarpon Oil Co.*, 522 F.2d 199, 200 (5th Cir. 1975) ("president and major stockholder" who made "ultimate decisions" for corporation in privity with it). Moreover, RLBS simply carries on the business of the now-defunct RLS—an entity expressly named in the February injunction. *See Regal Knitwear*, 324 U.S. at 14 (injunctions also bind "successors and assigns who operate as 'merely a disguised continuance of the old employer' . . . whether [the business was transferred] as a means of evading the judgment or for other reasons" (citations omitted)); *Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 71 (2d Cir. 1996) (finding successor organization bound by injunction because its leadership, goals and activities were identical to enjoined predecessor). Given the identity of interest among Rodberg and his limousine companies, the February injunction forbad RLBS—and any similar company that Rodberg creates—from operating a limousine business in the District without a license. *See G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 38 (1st Cir. 1980) (if "the same person continu[es] to do essentially the same thing with the same high degree of practical control, discretion and responsibility, before and after the injunction, with knowledge of the injunction, and after participating in the enjoined firm's corporate decisionmaking regarding its position in the injunction proceedings," then "corporations founded by him are also subject to it").

Rodberg asks us to respect the separate corporate identity of RLBS. But identity—of the corporate or the flesh-and-blood variety—is not determinative under Rule 65(d)(2). *See Elec. Workers Pension Trust Fund v. Gary's Elec. Serv. Co.*,

340 F.3d 373, 386 (6th Cir. 2003) (piercing corporate veil is not required to apply Rule 65(d)(2)). The Rule plainly contemplates that an injunction against one person can bind entirely separate persons. *See* FED. R. CIV. P. 65(d)(2)(C) (injunction automatically binds "persons who are in active concert or participation" with enjoined party); *see also Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) ("The law does not permit the instigator of contemptuous conduct to absolve himself of contempt liability by leaving the physical performance of the forbidden conduct to others."). In essence, Rodberg wants to use RLBS to do indirectly—operate without a license—what he is enjoined from doing directly. "The bald statement of this contention is its own refutation." *United States v. Schine*, 260 F.2d 552, 556 (2d Cir. 1958); *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 974 (3d Cir. 1996) (Rosenn, J.) ("Formalism is often the last refuge of scoundrels . . . .").

We conclude that the district court's October 2013 order did not modify the February 2013 injunction because RLBS was already bound by the earlier order as a matter of law. *See Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1154–55 (10th Cir. 2007) (order clarified, rather than modified, earlier injunction because it "was nothing more than . . . an explanation of its application to [an additional party] within the parameters of Rule 65 of the Federal Rules of Civil Procedure"). Accordingly, we are without jurisdiction to review the October 2013 order.[9]

---

[9] That we lack jurisdiction to consider the October 2013 order does not mean that Rodberg is free to violate it. Our holding necessarily moots Rodberg's challenges to the October 2013 order because, as we have determined, the February 2013 injunction *already* bound RLBS.

For the foregoing reasons, we affirm the district court's entry of default judgment in Case No. 13-7072 and dismiss Case No. 13-7161 for want of jurisdiction.

*So ordered*.