# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 18, 2019　　　Decided December 20, 2019

No. 18-5266

MATTHEW DUNLAP,
APPELLEE

v.

PRESIDENTIAL ADVISORY COMMISSION ON ELECTION
INTEGRITY, ET AL.,
APPELLANTS

---

Consolidated with 19-5051

---

Appeals from the United States District Court
for the District of Columbia
(No. 1:17-cv-02361)

---

*Gerard Sinzdak*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs was *Mark B. Stern*, Attorney.

*Harry Sandick* argued the cause for plaintiff-appellee. With him on the brief were *Daniel A. Friedman*, *Melanie Sloan*, and *John E. Bies*.

Before: GARLAND, *Chief Judge*, WILKINS, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

PER CURIAM:  Maine Secretary of State Matthew Dunlap was a member of the short-lived Presidential Advisory Commission on Election Integrity.  Suspecting that Commission work was taking place behind his back, Secretary Dunlap sued for access to Commission documents.  Most of the documents he sought have either now been released or are the subject of ongoing litigation in the district court.  The sole question on this appeal is whether the district court, relying on its mandamus jurisdiction, properly required the government to produce emails between the Vice President's staff and individuals who were then commissioners discussing potential appointees to the Commission.  Because Secretary Dunlap has not met the demanding standard for mandamus, we reverse.

I

In May 2017, the President established the Presidential Advisory Commission on Election Integrity to "study the registration and voting processes used in Federal elections." Exec. Order No. 13,799 § 3, 82 Fed. Reg. 22,389, 22,389 (May 11, 2017).  The President named Vice President Pence as Chair and Secretary Dunlap as a commissioner.  In November 2017, Dunlap sued the Commission and various federal officers, alleging that he was being denied access to documents to which he had a right of access under § 10(b) of the Federal Advisory Committee Act (FACA), 5 U.S.C. app. 2 § 10(b), as interpreted in *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999).  In December 2017, the district court agreed and issued a preliminary injunction requiring the Commission to provide Dunlap with "substantive information so that he can contribute along the way in shaping the ultimate recommendations of the Commission."  *Dunlap v. Presidential Advisory Comm'n on*

*Election Integrity* (*Dunlap I*), 286 F. Supp. 3d 96, 107 (D.D.C. 2017).

Twelve days later, the President dissolved the Commission. Exec. Order No. 13,820, 83 Fed. Reg. 969 (Jan. 3, 2018). The Commission then sought reconsideration of the preliminary injunction, which the district court denied in June 2018. *Dunlap v. Presidential Advisory Comm'n on Election Integrity* (*Dunlap II*), 319 F. Supp. 3d 70, 77-78 (D.D.C. 2018). Thereafter, the Commission released some documents, while continuing to dispute its obligation to release others. This appeal involves only a small portion of the remaining documents: emails between the Vice President's staff and individuals who were then commissioners discussing potential appointees to the Commission. In January 2019, the district court ordered the government to release those emails, *Dunlap v. Presidential Advisory Comm'n on Election Integrity* (*Dunlap III*), No. 17-cv-02361, slip op. at 3 (D.D.C. Jan. 28, 2019) (J.A. 216), and the government filed a notice of appeal.

II

Dunlap disputes our jurisdiction to hear this appeal. In his view, the district court's January 2019 order merely clarified its December 2017 preliminary injunction, which the Commission did not initially appeal.[1] A party must ordinarily wait until final judgment before it can appeal, and an order that merely *clarifies*

---

[1] The Commission contends that its January 2018 motion for reconsideration extended the time to appeal the December 2017 injunction until after the district court denied the motion, at which point the Commission did file a notice of appeal. Comm'n Reply Br. 11-12 (citing FED. R. APP. P. 4(a)(4)). Because we rest our jurisdiction on the January 2019 order, we do not consider this argument.

an earlier injunction is subject to the same restriction. *United States v. Philip Morris USA Inc.*, 686 F.3d 839, 844 (D.C. Cir. 2012). By contrast, an order "granting" or "modifying" an injunction is subject to interlocutory review. 28 U.S.C. § 1292(a)(1). "We construe this exception 'narrowly,' lest we 'turn the barrier against piecemeal appeals into Swiss cheese.'" *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015) (quoting *Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258, 1261 (D.C. Cir. 2012)). An order modifies an earlier injunction "when it actually changes the legal relationship of the parties to the decree." *Philip Morris*, 686 F.3d at 844 (internal quotation marks omitted).[2]

The only question at issue here is whether the January 2019 order simply clarified the December 2017 preliminary injunction or instead changed the parties' legal relationship with respect to the subject emails.[3]

---

[2] To appeal an interlocutory order that has the "practical effect" of modifying an injunction, as opposed to one that "clearly grants or denies a specific request for injunctive relief," there are additional criteria the appellant must meet. *Philip Morris*, 686 F.3d at 844 (internal quotation marks omitted). It must show that the order either (1) "affect[s] predominantly all of the merits," *Salazar*, 671 F.3d at 1262 (quoting *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 n.3 (D.C. Cir. 1986)), or (2) "might have a 'serious, perhaps irreparable, consequence,' and . . . can be 'effectually challenged' only by immediate appeal," *id.* (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)).

[3] The parties do not address whether the additional requirements noted in footnote 2 are met. On this record, however, we easily conclude that they are. The January 2019 order undoubtedly does not "affect[] predominantly all of the merits." *Id.* (quoting *I.A.M.*, 789 F.2d at 24 n.3). But the government can "effectually challenge[]" the

Even construing the exception for interlocutory appeals "narrowly," *see Salazar*, 671 F.3d at 1261, we conclude that, because the December 2017 preliminary injunction did not encompass those emails, the January 2019 order requiring their release was a modification subject to interlocutory review. Although the emails were among many categories of documents that Dunlap had requested before the December 2017 injunction, the district court specifically declined to consider his requests "line-by-line." *Dunlap I*, 286 F. Supp. 3d at 107. Instead, it gave three examples of "substantive disclosures" that Dunlap should have received and instructed the government to provide "any similar documents." *Id.* at 108.

The emails at issue here are not "similar" to the three examples listed by the district court: (1) a draft voter data request that the Commission's Vice Chair planned to send to state election officials; (2) another commissioner's proposals for location, content, and possible speakers at a September 2017 meeting; and (3) plans for the next meeting thereafter, including speaker possibilities and an invitation to an advocacy group. *Id.* Private emails between Executive Branch officials and individuals who served as commissioners about potential additional commissioners are quite distinct from these examples of documents about the Commission's ongoing, substantive work. The government, when contemplating whether to appeal

---

order only by immediate appeal, because once the documents are disclosed, the confidentiality of the appointments process is compromised. *Id.* (quoting *Carson*, 450 U.S. at 84). And such a disclosure "might have a 'serious, perhaps irreparable, consequence.'" *Id.* (quoting *Carson*, 450 U.S. at 84). As the district court explained in its order staying the disclosure of the emails pending appeal, "[t]he individuals involved are conveying sensitive advice." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-02361, slip op. at 8 (D.D.C. June 21, 2019).

the December 2017 preliminary injunction, could not have reasonably foreseen that the injunction extended that far.

Our understanding of the December 2017 injunction is reinforced by the district court's January 2019 order. In its December 2017 injunction opinion, the district court repeatedly made clear that Dunlap had a right to "substantive" information. *Id.* at 107, 108, 109, 111. But in its January 2019 order, the court described the subject emails as "quasi-procedural." *Dunlap III*, slip op. at 3 (J.A. 216). To be sure, the court thought that the emails "could illuminate ways in which [Dunlap's] substantive contributions were inhibited." *Id.* But the order nonetheless described the emails as "quasi-procedural," in sharp contrast to other documents that it described as "substantive" and therefore "within the scope of the Court's preliminary injunction," and to still others that it described as "expressly" covered by the preliminary injunction. *Id.* at 2-3 (J.A. 215-16).

In sum, because the emails at issue are neither "similar" to the "examples" of covered documents listed in the December 2017 injunction opinion, nor "substantive disclosures" within the plain meaning of that opinion, *Dunlap I*, 286 F. Supp. 3d at 108, they were not among the disclosure obligations imposed by that injunction. Accordingly, the January 2019 order that required their release changed the legal relationship between the parties and hence was immediately appealable.

III

We now turn to the merits of this appeal.

In issuing the preliminary injunction, the district court rested its jurisdiction on the Mandamus Act, 28 U.S.C. § 1361.

*Dunlap I*, 286 F. Supp. 3d at 105.[4]  Mandamus is "one of the most potent weapons in the judicial arsenal," a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted).  As both parties agree, "[t]o show entitlement to mandamus, [Dunlap] must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Dunlap I*, 286 F. Supp. 3d at 105 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)); Comm'n Br. 12-13; Recording of Oral Arg. at 19:54-20:00 (counsel for Dunlap).  On appeal, we examine whether the plaintiff satisfies those requirements de novo.  *Am. Hosp. Ass'n*, 812 F.3d at 190.

FACA requires that "documents which were made available to or prepared for or by each advisory committee shall be available for public inspection."  5 U.S.C. app. 2 § 10(b).  In light of FACA's admonition that advisory committees should be "fairly balanced" and exercise independent judgment free from "inappropriate[] influence[,]" *id.* § 5(b)(2), (b)(3), (c), we have recognized that committee members have "the right to fully participate in the work of the committee," *Cummock*, 180 F.3d at 291.  To that end, a FACA committee member should receive information "made available to the [committee] during the

---

    [4] *See* 28 U.S.C. § 1361 (providing that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff").  The district court turned to mandamus because it determined that FACA does not include a private right of action. *Dunlap I*, 286 F. Supp. 3d at 105 n.3.  Because Dunlap agrees that he has to meet the mandamus standard, Recording of Oral Arg. at 19:54-20:00, we do not question this premise.

course of its deliberative process and without which [the committee member's] ability to fully and adequately participate in that process [would be] impaired." *Id.* at 292.

As we have noted, to be entitled to mandamus, Dunlap must show that he has a clear and indisputable right to the emails discussing Commission appointments. It is undisputed that these emails were "made available to" certain individuals who were Commission members but not others. But Dunlap cites no case or statute that extends the "work of the committee" or its "deliberative process" to conversations surrounding who should be on the Commission. Indeed, his counsel concedes that he knows of no case in which a court has ordered the disclosure of materials related to the formation or membership of a federal advisory committee. Recording of Oral Arg. at 20:00-20:44. Moreover, in this case, the Commission's mission was expressly distinct from the appointments process. The Executive Order establishing the Commission directed it to "study the registration and voting processes used in Federal elections." Exec. Order No. 13,799 § 3, 82 Fed. Reg. at 22,389. It reserved for the President alone, however, the power to appoint additional members. *Id.* § 2, 82 Fed. Reg. at 22,389.

Because Secretary Dunlap cannot clearly and indisputably show that the emails he seeks fell within the work of the Commission, the district court lacked jurisdiction to entertain Dunlap's request for their disclosure. *Am. Hosp. Ass'n*, 812 F.3d at 189. We therefore reverse the court's January 28, 2019 order insofar as it required the release of those emails.

*So ordered.*